The State, ex rel. Walker, Prosecuting Attorney, v. Green.

Filed Dec. 2, 1887.

No. 12,908.

THE STATE, EX REL. WALKER, PROSECUTING ATTORNEY, v. GREEN.

MEDICINE AND SURGERY.—*Act Regulating.—Constitutionality.—License.— Qualifications of Applicants.—Special Privileges and Immunities.*—The act of April 11th, 1885 (Acts of 1885, p. 197), regulating the practice of medicine, surgery and obstetrics, requiring a license and prescribing the qualifications of persons entitled to receive the same, viz., (1) gradua-

The State, *ex rel.* Walker, Prosecuting Attorney, *v.* Green.

tion from a reputable medical college, (2) a continuous residence and practice of medicine in this State for ten years prior to the taking effect of the act, or (3) a continuous residence and practice of medicine in this State for three years prior to the taking effect of said act and an attendance upon one full course of lectures at a reputable medical college, is not unconstitutional as granting special privileges and immunities to the citizens of this State, or otherwise.

SAME.—*License Procured by Fraud.*—*Proceeding by Prosecuting Attorney to Annul.*—*Quo Warranto.*—While the act of April 11th, *supra*, declares that a license procured by fraud shall be void, no provision is made for any judicial proceeding to have it so adjudged, nor can the prosecuting attorney bring an information in the nature of a *quo warranto* against the licensee to annul a license so obtained.

SAME.—*License not a Franchise.*—The right of a person to practice his profession, under a license issued pursuant to a statute enacted by the Legislature under the police power of the State, is not a franchise, it being essential to the character of a franchise that it should be a grant from the sovereign authority of the State.

SAME.—Section 1145, R. S. 1881, providing that an information may be prosecuted for the purpose of annulling any letters-patent, certificate or deed issued by the State authorities, when obtained by fraud, relates to real estate transactions, and is not applicable to licenses issued under the medicine and surgery act.

From the Benton Circuit Court.

*L. T. Michener,* Attorney General, *M. H. Walker,* Prosecuting Attorney, *E. P. Hammond* and *J. H. Gillett,* for appellant.

*D. Fraser,* for appellee.

HOWK, J.—This is an information in the name of the State, on the relation of Matthew H. Walker, Esq., prosecuting attorney of the 30th judicial circuit, against the appellee, Nellie E. Green, as defendant. Appellee's demurrer to the information was sustained by the court below, and to this ruling the State excepted, and, failing to amend or plead further, it was adjudged by the court that the State take nothing by its suit herein.

From this judgment the State has appealed to this court, and has here assigned as error the sustaining of appellee's demurrer to the information filed herein.

In this information, it was alleged that, on the 15th day of August, 1885, defendant, Nellie E. Green, being desirous to obtain license from the clerk of the Benton Circuit Court to practice medicine, surgery and obstetrics in this State, filed with such clerk an affidavit stating therein that she had resided and practiced medicine, surgery and obstetrics in this State continuously for three years immediately preceding the date of the taking effect of an act of the General Assembly of this State, approved April 11th, 1885, at localities in this State, giving the date and length of time in each of such localities; and that, prior to the date of the taking effect of the aforesaid act, she had attended one full course of lectures at the College of Physicians and Surgeons in Keokuk, Iowa, the same being a reputable medical college. It was further alleged in such information, that, at the time the defendant filed such affidavit, she also filed with such clerk the affidavit of two other persons, to the effect that they were householders or freeholders of Benton county, and were acquainted with defendant, Nellie E. Green; and that they were informed and had reason to believe that she had practiced medicine, surgery and obstetrics, and had attended a course of lectures at a medical college substantially as she had stated such facts in her own affidavit filed with such clerk. These two affidavits are set out at length in the information, and it is then alleged therein that upon the filing of such affidavits, and on the same day, the clerk of the court below issued to the defendant, Nellie E. Green, a certificate showing that she had complied with the laws of this State relating to the practice of medicine, surgery and obstetrics, and thereby authorizing her to practice medicine, surgery and obstetrics in Benton county, setting out a copy of such certificate and license.

And the relator further averred, that the certificate and license issued as aforesaid by such clerk to the defendant, Nellie E. Green, were procured by her fraud, in this: That the matters and things set forth in the aforesaid affidavits

were wholly false, and were known to be false by the defendant at the time she filed such affidavits; that defendant had not, for three years immediately preceding the taking effect of said act, approved April 11th, 1885, continuously practiced medicine, surgery and obstetrics at the place or places stated in such affidavits, nor at any other place or places in this State, and that she never attended one full, or partial, course of lectures at the above named medical college, or at any other reputable medical college. Wherefore the relator prayed that the certificate and license, issued as aforesaid by such clerk to the defendant, Nellie E. Green, be annulled, vacated, set aside and declared void, and that such defendant be perpetually enjoined from practicing medicine, surgery or obstetrics, under or by virtue of such certificate and license, and for other proper relief.

In her demurrer, defendant, Nellie E. Green, assigned the following grounds of objection to the information, namely:

1. The information does not state facts sufficient to constitute a cause of action.

2. The Benton Circuit Court had no jurisdiction of the subject-matter of this action.

3. The Benton Circuit Court had no jurisdiction of the person of defendant.

4. The State had no capacity to sue in this action.

5. The State's relator had no capacity to sue in this action.

The act referred to in the information herein is entitled "An act regulating the practice of medicine, surgery and obstetrics, providing for the issuing of licenses to practice, defining certain misdemeanors, and providing penalties," approved April 11th, 1885. Acts of 1885, p. 197 *et seq.* Section 1 of this act declares that it shall be unlawful for any person to practice medicine, surgery or obstetrics in this State, without first obtaining a license so to do, as provided in such act. Section 2 of such act, so far as applicable to the case at bar, provides as follows: "Any person desiring to practice medi-

cine, surgery or obstetrics in this State, shall procure from the clerk of the circuit court of the county wherein he or she desires to practice a license so to do, which license shall be issued to such person only when he or she * * * shall file with such clerk his or her affidavit, and the affidavit of two reputable freeholders or householders of the county, stating that he or she has resided and practiced medicine, surgery and obstetrics in this State continuously for three years immediately preceding the date of the taking effect of this act, stating particularly the locality or localities in which he or she practiced during said period, and the date and length of time in each locality, and that he or she had, prior to said date, attended one full course of lectures in some reputable medical college." Section 3 of such act provides that any clerk who shall issue such a license to any person who had not complied with the requirements of section 2 of the act shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined, etc., and then declares that "such license, or one procured by any false affidavit, shall be deemed and held to be void." Section 4 of the act makes it a misdemeanor, punishable by fine, etc., for any person to practice medicine, surgery or obstetrics in this State without having first procured from the clerk of the circuit court of the county wherein he or she shall so practice a license as provided in such act: "*Provided,* That this act shall not be deemed to prohibit women from practicing obstetrics, and such midwives are hereby expressly exempted from its provisions." Section 5 of such act provides that no cause of action shall lie in favor of any person for his services as physician, surgeon or obstetrician who had not, prior to the rendition of such services, procured a license to practice as provided in such act, and any person who had paid money, or delivered property, for any such services, to any person not so licensed, may recover the same or the value thereof in any court of competent jurisdiction. The 7th and last section

of such act simply prescribes the form of the license to be issued by the proper clerk.

In this court appellee's learned counsel has vigorously assailed.in argument the sufficiency of the relator's information herein, upon two grounds, as follows:

1. Because the above entitled act of April 11th, 1885, is unconstitutional, in that " it creates privileges and makes discriminations unwarranted by the Constitution."

2. The case stated in the information is not one in which, under the law of this State, an information in the nature of a *quo warranto* will lie, or which the prosecuting attorney is authorized to bring and maintain in the name of the State of Indiana upon his own relation.

These two grounds we will consider and pass upon in the order of their statement, merely premising that if either one of them is found to be well taken the information must be held to be insufficient and the judgment below must be affirmed.

1. Is the above entitled act of April 11th, 1885, unconstitutional? Is such act in conflict with or repugnant to any provision of our organic or fundamental laws, State or Federal? In considering this question it must be borne in mind, of course, that the power and authority of the General Assembly of this State, in the enactment of laws, is supreme and sovereign, and is free from any limitations or restrictions thereon, except such as are imposed by the State Constitution or the Federal Constitution, and the laws and treaties thereunder.

In the recent case of *Eastman* v. *State,* 109 Ind. 278, in considering the question of the constitutionality of the aforesaid act, it was held by this court that the Legislature has power to regulate the practice of medicine and surgery by requiring a license therefor, and to prescribe the qualifications of applicants for such license, and that such act was a constitutional and valid law. The case cited was approved and followed in the later case of *Orr* v. *Meek,* 111 Ind. 40.

It is not claimed by appellee's counsel, as we understand his argument, that the General Assembly of this State may not, as a proper exercise of the police power of the State, regulate and license the practice of medicine and surgery, and prescribe the qualifications of applicants for license, by the enactment of a constitutional and valid statute. Counsel says: "I do not wish to be understood as attacking the validity of the entire act; if there are provisions that will withstand the constitutional test of equal rights, equal privileges, and equal concessions, they do not come within the purview of this discussion."

The statute provides for the issue of license to practice medicine, etc., to three-classes of applicants, and the proof of qualification to be produced by each class, as follows :

1.  The affidavit of the applicant, stating that he or she has regularly graduated in some reputable medical college, and the exhibition to the proper clerk of his or her diploma.

2.  The affidavits of the applicant and of two reputable freeholders or householders of the county, stating that such applicant had resided and practiced medicine, etc., in this State continuously for ten years immediately prior to the taking effect of such act.

3.  The affidavits of the applicant and of two reputable freeholders or householders of the county, stating that he or she had resided and practiced medicine, etc., in this State, continuously for three years immediately prior to the taking effect of such act, and that he or she had, prior to that date, attended one full course of lectures in some reputable medical college. Acts of 1885, pp. 197, 198, section 2.

It is claimed by appellee's counsel, that these provisions of the statute, in so far as they make continuous residence in this State, either for ten years or for three years, one of the necessary qualifications of the applicant for license to practice medicine, etc., are in conflict with, and repugnant to, section 2 of article 4, and to section 1 of article 14 of the Federal Constitution. In section 2 of article 4 of the Federal

Constitution it is declared that " The citizens of each State shall be entitled to all privileges and immunities of citizens, in the several States; " and in section 1 of article 14 of the same Constitution it is declared that " No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." Sections 19 and 39, R. S. 1881.

In discussing this constitutional question appellee's counsel assume that the effect of the statute under consideration is to grant the practitioner of medicine, etc., who had resided and practiced his profession in this State for specified periods of time, " privileges and immunities " which are not, given the practitioner who has practiced his profession for the same periods of time, but has resided in another State. Counsel says : " Ten years practice of medicine and surgery, and ten years residence in this State, give to a citizen of Indiana a license ; in other words, to follow this profession for ten years is sufficient for a citizen of Indiana. Is ten years practice by a citizen of Illinois sufficient for him ? Does ten years practice answer the same purpose for each citizen ? The statute gives to one a license because he has practiced for ten years, and refuses it to the other, and why ? Because the one is a citizen of the State and the other is not. Can the State make this discrimination between her own citizen and the stranger who comes within her borders from a neighbor State ? Not so. The Federal Constitution puts it beyond the power of hostile legislation to render wholly false the great principle that all men are alike equal, and all citizens of the United States alike entitled to the same chances in life."

The fundamental error in this argument of counsel is this, that it rests and proceeds upon the erroneous and unwarranted assumption that the above entitled act grants " privileges and immunities " to the citizens of this State which are not allowed by the act to the citizens of other States. The act does not grant privileges or immunities to any citizen, or

class of citizens, whether within or without this State.   In the exercise of the police power of the State, for the purpose of protecting its inhabitants from the ignorance or effrontery of the charlatans, empirics or mere quacks who professed and pretended to be well skilled and qualified in the noble sciences of medicine and surgery, the General Assembly of the State, by the statute we are now considering, as we have seen, enacted that it should be unlawful for any person (without any reference to residence) to practice medicine, surgery or obstetrics in this State without having first obtained a license so to do, as provided in such act.

It is not contended by appellee's counsel, nor, indeed, can it be successfully maintained, that the General Assembly may not, under the police power of the State, so far regulate the practice of medicine, surgery or obstetrics in this State as to require that any person desiring to engage in such practice shall first procure a license so to do.    That far forth the constitutionality of the act under consideration has already been upheld and fully sustained by this court in *Eastman* v. *State, supra,* and *Orr* v. *Meek, supra.*

In requiring such license, and prescribing the qualifications of the applicant therefor and the necessary proof thereof, the statute first provided, as we have seen, that license should be issued to any applicant who showed by his or her affidavit that he or she had graduated in some reputable medical college, and who exhibited to the proper clerk his or her diploma, without any reference to his or her residence.   This provision of the statute is not assailed by appellee's counsel, and, certainly, it is not repugnant to either the State or Federal Constitution.   It will be observed, that the statute nowhere denies to any person, of any age, sex, race, color or residence, the right or privilege, if such it be, to obtain a license to practice medicine, surgery or obstetrics in this State if such person can show, in the mode prescribed by the statute, that he or she is possessed of the requisite statutory qualifications to entitle him or her to such license.

In *Ex Parte Spinney*, 10 Nev. 323, the precise question we are now considering was before the Supreme Court of the State of Nevada, upon a statute containing provisions very similar to those of the statute of this State. HAWLEY, C. J., there said: " The real test of qualification in the act under consideration, is based upon medical skill and knowledge. The physician or surgeon entitled to practice must have received a medical education and must have obtained a diploma from some regularly chartered medical school. Now the Legislature saw fit, in establishing this test, to except from its provisions a certain class of physicians and surgeons; in so doing it in effect declared—to state the extreme case— that the physician or surgeon who had practiced his profession in this State for the period of ten years immediately preceding the passage of this act, was as well qualified, in its judgment, to continue the practice of his profession as the student, coming fresh from the halls of college with his diploma, was to commence it. In adopting this exception the Legislature did not infringe upon any provision of our State or Federal Constitution." See, also, *State* v. *Dent*, 25 W. Va. 1, and *Fox* v. *Territory*, 5 W. Coast Rep. 339, in each of which cases, statutes regulating the practice of medicine, etc., containing provisions similar to those of the statute of this State, were sustained and held to be constitutional and valid laws.

In the case in hand, we are of opinion that the provisions of the above entitled act assailed here in the oral and written arguments of appellee's counsel are not in conflict with our fundamental laws, State or Federal, but are constitutional and valid.

2. Does the information herein state a case wherein, under our law, such an information will lie, or which the prosecuting attorney may bring and maintain in the name of the State upon his own relation? This question must, we think, be answered in the negative. It is true that the facts stated in the information, and admitted to be true by appellee's de-

murrer, show very clearly that she obtained her license to practice medicine, etc., in Benton county upon false affidavits. In such case the statute provides, as we have seen, that the license so procured " shall be deemed and held to be void." It is conceded by appellant's learned counsel, and correctly so, that notwithstanding this legislative declaration that the license so procured shall be deemed and held to be void, yet such license would not be void until it was judicially declared so to be in a proper proceeding for that purpose, and would protect appellee from prosecution for practicing her profession, and enable her to recover compensation for her services in the course of her practice. It is true, also, that the above entitled act does not provide for any suit or judicial proceeding, in which the license, procured by any false affidavit, might be adjudged and held to be void.

But it does not follow, by any means, that, because of the omission in the statute to provide for such a suit or proceeding, resort may be had to an information, in the nature of a *quo warranto*, to obtain an adjudication that appellee's license, procured by false affidavits as it was, should be deemed and held to be void. Appellant's counsel claim that the right acquired under a license issued pursuant to the above entitled act is a franchise. If this claim of counsel could be maintained, then it would follow that relator's suit was well brought, under the provisions of section 1131, R. S. 1881, and that it was error to sustain the demurrer to the information. But counsel clearly err, we think, in claiming that the right acquired by the licensee, under such a license, is, in the proper or legal sense of the word, a franchise. A franchise is a privilege or immunity which can only exist by special grant of the government of the State, and is incapable of existing without such grant, and which the citizen can not enjoy without legislative grant. It is essential to the character of a franchise, in the legal sense of the word, that it should be a grant from the sovereign authority, and in this country no franchise can be held which is not derived from

the legislative power of the State. It can not be held, we think, that the right of any person to practice his or her profession, under a license issued pursuant to a statute enacted by the Legislature under the police power of the State, comes within any legal definition of a franchise. *Chicago, etc., R. W. Co.* v. *People*, 73 Ill. 541; *Bank of Augusta* v. *Earle*, 13 Peters, 519; *City of Bridgeport* v. *New York, etc., R. R. Co.*, 36 Conn. 255 (4 Am. R. 63).

But it is further claimed by appellant's counsel that section 1145, R. S. 1881, is applicable to this case, and that, under the provisions of that section, an information in the nature of a *quo warranto* will lie to annul and vacate appellee's certificate or license.

That section provides that an information may be prosecuted for the purpose of annulling or vacating any letters-patent, certificate or deed issued by the State authorities, when there was reason to believe that the same were obtained by fraud, etc. Manifestly, these provisions of the statute are only applicable to such certificates as were issued in relation to real estate, and can not be applied to such a certificate as the one issued to and held by appellee.

The demurrer to the information herein was correctly sustained.

The judgment is affirmed.

Filed Dec. 2, 1887.