CRAIG, APPELLANT, v. BOARD OF MEDICAL EXAMINERS OF THE STATE OF MONTANA, RESPONDENT.

[Submitted March 30, 1892.  Decided April 5, 1892.]

PHYSICIANS AND SURGEONS—*Board of medical examiners*—*Statutory construction*—*Examination of applicants.*—The board of medical examiners are authorized by the Act of February 28, 1889 (16 Sess. p. 175), regulating the practice of medicine, to require a graduate of a medical school, who commences the practice of medicine within the State after the passage of the act, to submit to and successfully pass an examination as a condition precedent to the issuance of a permanent certificate. (*State ex rel. Narcross* v. *Board of Medical Examiners,* 10 Mont. 162, approved.)

SAME— *Constitutional law*—*Board of medical examiners.* — A statute regulating
the practice of medicine, and providing for the examination and issuing of
certificates to persons desirous of practicing the same, cannot be deemed to
create unjust discrimination, and to be unconstitutional because it exempts
graduates of medical schools, who were practicing medicine within the State at
the time of its enactment, from the necessity of passing an examination before
receiving a certificate, and requires such examination from all graduates of
medical schools who commence the practice of medicine within the State after
the enactment of the law. Such legislation is not repugnant to section 2 of
article iv. of the United States Constitution, nor in conflict with section 1 of the
fourteenth amendment thereto.

*Appeal from First Judicial District, Lewis and Clarke County.*

Application to the board of medical examiners for a certifi-
cate to practice medicine. Decision of board refusing to grant
appellant a certificate, unless he first submitted to and success-
fully passed an examination, was sustained by BUCK, J.
Affirmed.

*Thompson & Maddox,* for Appellant.

If sections 3 and 4 of the medical law, when construed
together, are held to empower the board of examiners to
require graduates, coming to the State after the passage of the
act, to submit to an examination, then the law is unconstitutional,
and in conflict with article iv., section 2, of the Constitution of
the United States, and also with section 1 of the fourteenth
amendment thereto. For the reason (1) that it would thereby
discriminate between persons of the same class under like con-
ditions in exempting from the operation of its provisions relat-
ing to the examination of applicants, all who were residents at
the time of its enactment, and imposing upon those coming to
the State thereafter the burden of an examination. The
medical law classifies physicians as graduates and non-gradu-
ates. Construing the law as contended for by appellant, all
graduates are subjected to the same requirements, and upon them
all are imposed alike the same conditions. All non-graduates
are alike subjected to the examination provided for in section 4
of the act. No distinction or discrimination is made between
non-graduates residing in the State, and non-graduates coming
to the State after the passage of the act. But to construe these
sections as contended for by the respondent would result in
discrimination between physicians of the same class or condi-

tion, i. e., graduates. It would divide them into two classes or groups: (1) Those who were and (2) those who were not residents of the State at the time of the enactment of the law. The latter class are required to submit to an examination, the former are not. The law is thereby brought within the constitutional inhibitions above stated. (*Missouri* v. *Lewis*, 101 U. S. 22, 31; *Barbier* v. *Connolly*, 113 U. S. 31, 32; *Minneapolis & St. Louis Ry. Co.* v. *Beckwith*, 129 U. S. 26, 30.) Physicians constitute the *class* affected by this legislation. Those who are graduates come within its operation under like circumstances and conditions. Those who are not graduates come within its operation also under like conditions and are equally affected. But to give the law the construction asked for by the respondent is to say that some of a certain class (physicians) under like conditions or circumstances (graduates) shall be subjected to the burden of an examination and others exempted therefrom; thereby denying to one of a certain class under a like condition a privilege or exemption allowed to another of the same class and of the same condition. If the law imposed upon all physicians who are graduates the same requirements, and allowed them the same immunities, it would be open to no constitutional objection. But when it imposes upon one the same burden from which it relieves another of the same class and of a like condition it is clearly a denial to a citizen of one State a privilege granted a citizen of another State; it is an abridgment of the privileges and immunities of a citizen of the United States; it is a violation of that equal protection of the laws guaranteed by the Constitution. (*State* v. *Pennoyer*, 65 N. H. 113; *Yich Wo* v. *Hopkins*, 118 U. S. 356; *Ward* v. *Maryland*, 12 Wall. 418.) For the reason (2) that it would result in unequal taxation. The law imposes upon all non-graduates the payment of a fee of fifteen dollars. This tax operates uniformly upon all who are required to submit to an examination. None but those who are examined are required to pay this fee, and none but non-graduates are required to be examined. But should the construction contended for by the respondent prevail, then this taxation would operate unequally upon graduates. Those who resided in the State at the time of the enactment of the law would be exempt from this burden. Those who came to the State after

its enactment would not. Of the physicians who are graduates, and therefore of the same class, and of a like condition, some would be subject to this tax and others would not. The discrimination is arbitrary and unjust. (See authorities, *supra*.)

*Corbett & Wellcome,* for Respondent.

The act is constitutional. That the legislature had the right to adopt an act regulating the practice of medicine as to all persons is admitted by the appellant. Article iv., section 2 of the Constitution of the United States, does not affect the right of a State to prescribe laws governing the practice of medicine, and within reasonable bounds prescribe the qualifications of those who shall be admitted to practice medicine within its boundaries. (*Bradwell* v. *State,* 16 Wall. 130.) Citizens of sister States are not exempt from the operation of our laws when they come here. (*Harrison* v. *Mayor of Vicksburg,* 3 Smedes & M. 581; 41 Am. Dec. 633.) The provisions of the act in question regulating the practice of medicine are not unreasonable or unjust. The provisions of the act in question are applicable, under the construction contended for by the respondent, to all persons desiring to enter into the practice of medicine in the State of Montana, and provision is made as well for citizens of foreign States as for citizens of our own State. No discrimination is made between persons of the same class under like conditions. All persons with diplomas are required to submit to an examination; all persons without diplomas are required to submit to an examination; citizens of Montana are required to submit to an examination, and citizens of a foreign State or country desiring to practice medicine in Montana are required to submit to an examination. No discrimination is made in favor of nor against any person or any class. The point raised by the appellant that discrimination is made between those who were residents at the time of the enactment of the law and those who have come since the enactment of the law is without force, for the reason that the legislature had the right to pass a law governing the practice of medicine in the future and prescribing the qualifications of those who should care to engage in its practice after the passage of the act. And for the further reason (the right to pass a law regulating the practice of medi-

cine not being disputed) that the legislature could not have passed a law regulating the practice of medicine which would subject those who had acquired rights prior to its passage to any new conditions, as such a law would be *ex post facto.* Physicians resident at the time of the law are not of the same condition as those becoming resident after the passage of the law. The privileges and immunities of citizens of the United States referred to in the fourteenth amendment are those which arise out of the nature and essential character of the national government, the provisions of its Constitution, or its laws and treaties made in pursuance thereof, and it is these which are placed under the protection of Congress by this clause of the fourteenth amendment. (*Slaughter House Case,* 16 Wall. 37.)   The right to practice medicine does not arise out of the nature and essential character of the national government, nor out of the provisions of its Constitution, nor out of any laws or treaties made in pursuance thereof. The fact that the appellant may have had the right by virtue of the law of the State from which he came to practice medicine within the State of which he is or was a citizen cannot entitle him, by virtue of anything in the Constitution of the United States and its amendments contained, to practice medicine within the State of Montana. (*Harrison* v. *Mayor of Vicksburg,* 3 Smedes & M. 581; 41 Am. Dec. 633; *Bradwell* v. *State,* 16 Wall. 130; *Commonw.* v. *Milton* and *City of Lexington* v. *Milton,* 12 Mon. B. 212; 54 Am. Dec. 522; see opinion of the court, pp. 528, 532.)   The payment of the fee required by section 8 of the act could not have been demanded from those who had acquired the right to practice medicine under the old law.   All who had not acquired the right to practice medicine under the old law are, as contended by the respondent, required to be examined by the terms of the new law.   Therefore, all to whom the requirements of examination apply must pay the tax.

BLAKE, C. J. — This case was tried upon an agreed statement of facts, and it appears that the appellant is a citizen of the United States, and a resident of this State; that he removed in April, 1891, from the State of Maine, where he had been engaged fourteen years in the practice of medicine and surgery;

that he applied for and received from the respondent a certificate, dated April 22, 1891, which entitled him to practice his profession until the next regular meeting of the board; and that respondent demanded, and appellant paid, the sum of fifteen dollars, which it retained. The remainder of the statement is as follows: " That said respondent board at said time, as a condition precedent to granting such certificate, required appellant to submit to and successfully pass an examination in the branches designated in section 4 of the Act of February 28, 1889, entitled 'An act to regulate the practice of medicine in the Territory of Montana, and to provide for the examination and issuing of certificates to persons desirous of practicing the same, and for the punishment of persons violating the provisions of this act.' That appellant refused to submit to such examination, or to any examination whatever. That said respondent board thereupon refused to grant to appellant a certificate to practice medicine and surgery in the State of Montana. That prior to such refusal on the part of the respondent board, the appellant presented his diploma to said board for verification as to its genuineness. That said respondent board found appellant's diploma to be genuine, and to have been issued by a medical school legally organized and in good standing, whose teachers were graduates of a legally organized school, and that appellant was the same person to whom such diploma was originally issued, which facts were regularly found in appellant's favor, within the meaning of section 3 of the said Act of February 28, 1889. That a quorum of the members of said respondent board were present and conducted the said October, 1891, meeting. That appellant is, and since the seventh day of June, 1876, has been a graduate in medicine, within the meaning of section 2 of the said Act of February 28, 1889. That a certificate was not granted to appellant by said respondent board solely upon the ground of appellant's refusal to submit to the examination referred to in paragraph 7, supra, and for no other cause."

The appellant claims that the board of medical examiners is not authorized by the statute, supra, to require him to pass an examination as a condition precedent to the issuance of a permanent certificate empowering him to practice medicine and surgery within the State.

The appellant became a resident of this State about two years after the passage of the act, and this language of the fourth section is applicable: "All persons entitled to practice under the ten-year provision mentioned in section 3 of this act, and all persons hereafter commencing the practice of medicine and surgery in any of its branches in the Territory, shall apply to said board for a certificate so to do, and such applicant, at the time and place designated by said board, or at the regular meeting of said board, shall submit to an examination in the following branches, to wit, anatomy, physiology, chemistry, histology, *materia medica*, therapeutics, preventive medicines, practice of medicine, surgery, obstetrics, diseases of women and children, diseases of the nervous system, diseases of the eye and ear, medical jurisprudence, and such other branches as the board shall deem advisable, and present evidence of [having practiced the required term of ten years, or of] having attended three (3) courses of lectures of at least four (4) months each. Said board shall cause such examination to be both scientific and practical, but of sufficient thoroughness and severity to test the candidate's fitness to practice medicine and surgery. When desired, said examination may be conducted in the presence of the dean of any medical school, or the president of any medical society of this Territory. After examination, said board shall, if the candidate has been found qualified, grant a certificate to such candidate to practice medicine and surgery in the Territory of Montana, which said certificate can only be granted by the consent of not less than four (4) members of said board, and which said certificate shall be signed by the president and secretary of said board, and attested by a seal thereof."

There can be no controversy respecting the meaning of these clauses when viewed by themselves; but the appellant contends that we must consider the entire statute, and that the third section limits its operation to non-graduates. This section provides "that every person wishing to practice medicine or surgery in any of their departments within this Territory shall do so only upon complying with the requirements of this act. If a graduate in medicine, such person shall present his or her diploma to the territorial board of examiners for verification as to its genuineness. If the diploma is found genu-

ine, and is issued by a medical school legally organized and in good standing, whose teachers are graduates of a legally organized school, which fact the territorial board of examiners shall determine, and if the person presenting and claiming such diploma be the person to whom the same was originally granted, then the territorial board of examiners shall issue its certificate to that effect, and such certificate shall be conclusive as to the right of the lawful holder thereof to practice medicine and surgery within this Territory; and any person coming to the Territory may present his or her diploma to any member of the board of examiners, who may issue a certificate, good until the next regular meeting of the board. If not a graduate, the person practicing medicine or surgery within this Territory, unless he or she shall have been in continuous practice in this Territory for a period of not less than ten years, of which fact he or she shall present to the territorial board of examiners satisfactory evidence of the same in the form of affidavits, shall appear before said territorial board of examiners, and submit to such examination as may be required."

The president and secretary of the board of examiners are authorized to administer oaths to applicants for certificates and witnesses, and the act requires " meetings for examination" to be held at the capital and " other central points." (§ 2.) A graduate in medicine, who comes to the State after the enactment of this law, may present his diploma, and obtain a certificate, which is good until the " next regular meeting of the board." The fourth section declares that " all persons hereafter commencing the practice of medicine and surgery "— thereby ignoring all distinctions between graduates of medical schools and non-graduates —" shall submit to an examination." There are no other clauses which mention in direct terms those who are not residents.

The question was inquired into when the subject was before this court in *State* v. *Board of Medical Examiners,* 10 Mont. 162, and it was adjudged that these provisions required the examination of all graduates " who commence to practice medicine in this State after the passage of this act." We approve this construction of the statute.

The appellant maintains that, if this view be sound, the act

creates an unjust discrimination against the rights and privileges of the citizens of another State, and is in conflict with the Constitution of the United States, and the fourteenth amendment, to wit: "The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." (Art. iv. § 2.) "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law." (Const. Amend. 14, § 1.) Legislation similar to that under consideration has been thoroughly discussed in many cases, and uniformly upheld by the court. It is founded upon the police power of the State. We refer to some of the leading authorities, which cover every point suggested by the counsel for the appellant. (*State* v. *Dent*, 25 W. Va. 1; *Dent* v. *West Virginia*, 129 U. S. 114; *Ex parte Spinney*, 10 Nev. 323; *Harding* v. *People*, 10 Colo. 387; *Fox* v. *Washington*, 2 Wash. Ty. 297; *Logan* v. *State*, 5 Tex. App. 306; *People* v. *Blue Mountain Joe*, 129 Ill. 370; *Eastman* v. *State*, 109 Ind. 278; 58 Am. Rep. 400; *State* v. *Green*, 112 Ind. 462.) The case of *State* v. *Dent*, *supra*, was affirmed by the Supreme Court of the United States, and Mr. Justice Field, for the court, said: "It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex, and condition. This right may in many respects be considered as a distinguishing feature of our republican institutions. Here all vocations are open to every one on like conditions. All may be pursued as sources of livelihood; some requiring years of study and great learning for their successful prosecution. The interest, or, as it is sometimes termed, the 'estate,' acquired in them — that is, the right to continue their prosecution — is often of great value to the possessors, and cannot be arbitrarily taken away from them, any more than their real or personal property can be thus taken. But there is no arbitrary deprivation of such right where its exercise is not permitted because of failure to comply with conditions imposed by the State for the protection of society. The power of the State to provide for the general welfare of its people authorizes it to prescribe all such

regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud.  As one means to this end it has been the practice of different States, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely; their possession being generally ascertained upon an examination of parties by competent persons, or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal.  The nature and extent of the qualifications required must depend primarily upon the judgment of the State as to their necessity.  If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty."  We concur in this opinion, which has not been criticized, and it is needless to multiply citations.

It is ordered and adjudged that the judgment be affirmed.

*Affirmed.*

HARWOOD, J., and DE WITT, J., concur.