Common Pleas Court of Cuyahoga County.

JACK B. DWORKEN V. THE CLEVELAND AUTOMOBILE CLUB, A CORPORATION.

Decided March 14, 1931.

*Jos. L. Stern* and *D. S. Anderson,* chief counsel for plaintiff.

*A. G. Newcomb* and *Frank J. Merrick,* chief counsel for defendant.

WOLF, J. (Of Fulton County sitting by designation.)

This is an action in which the plaintiff seeks to enjoin the defendant from engaging in the practice of law; and plaintiff says that he brings the action for the benefit of himself and all other attorneys at law who may wish to join with him, for the public and for the courts of this country.

Eighteen different attorneys-at-law have entered their appearance as attorneys for plaintiff.

Plaintiff says that he is an attorney, duly admitted to practice in all of the courts of record of the State of Ohio and several of the courts of the United States, and that as such and by virtue of the franchise granted him by the Supreme Court of the State of Ohio and the United States Courts he has practiced law for a long period of time, and now maintains an office in the City of Cleveland, and has built up a large practice which is of great value to him.

Plaintiff says that the defendant is a corporation; that it has not the right to engage in professional business and has not the right to practice law or maintain a legal department or hire and employ attorneys to carry on the practice of law for the benefit of others.

Plaintiff further says that the defendant, for a long period of time has, illegally and in violation of law and its articles of incorporation, advertised that it has a legal department for the use of others, and that it maintains a law department, and that it practices law by hiring attorneys to carry on the practice of law.

Plaintiff says that said advertising is for the purpose of inducing the public to become members of said corporation; that the acts of the defendant are illegal, contrary to the rights of plaintiff and all other attorneys, the public and the courts and that such acts tend to bring the legal profession, the administration of justice and law in bad repute.

Plaintiff prays that the defendant, its officers, agents, directors, trustees and attorneys may be enjoined from advertising that it maintains a legal department for the

benefit of its members and others, and from maintaining a legal department or carrying on the practice of law through itself, its officers, agents, directors, trustees or attorneys and for other relief.

The defendant filed an answer in which it admits that it is an Ohio corporation; that the plaintiff is an attorney admitted to practice law as alleged in his petition; that he has practiced law for many years and now maintains an office for the practice of law in the City of Cleveland and has built up a large practice in the legal profession, and denies all the other allegations of the petition.

The case was heard and submitted to the court. The following facts are clearly established by the evidence:

That plaintiff is an attorney at law, admitted to practice in all the courts of record of the State of Ohio, and several of the United States Courts; that he has been engaged in the practice of law for more than seventeen years; that he now maintains and has during all these years maintained an office for the practice of law in the City of Cleveland, and has built up a large legal practice which is of great value to him; that the defendant, The Cleveland Automobile Club, is a corporation organized under the laws of the State of Ohio, and formed for the purpose, among others,

"of aiding and assisting in procuring local, state and national legislation for the advancement and protection of automobile interests, maintaining and defending the rights and privileges incident to the lawful use of motor vehicles when such rights and privileges are assailed";

that defendant's principal office is in the City of Cleveland; that it has branch offices in Lorain, Painesville, Kent and Ravenna, Ohio; that it now has membership of more than 28,000 members; that during the year 1919 it established and has maintained since such time a legal department, the duties of which, among others, are:—

"To advise the members on any legal matters pertaining to or in connection with the operation of automobiles or other motor vehicles exclusively owned or operated by the Club members; to defend members arrested in speed

traps or arrested for technical violations of traffic laws in villages or municipalities outside of the City of Cleveland";

that it employs and hires attorneys at its main office in the City of Cleveland and pays them annual salaries; that these attorneys devote their entire time to he services of the defendant and defendant's members and are not permitted to engage in the private practice of law; that these attorneys have permanent offices in the main office of the defendant in the city of Cleveland, and defendant furnishes them with all necessary clerical and stenographic assistance, stationery, books and supplies; that all expenses incident to the operation of said legal department are paid by the defendant; that the cost of maintaining said department during the year 1929 was $26,514.07; that similar departments are maintained at the branch offices of the defendant, except that the attorneys in charge of such branch offices are not required to devote their entire time to the services of the defendant and defendant's members, but also engage in the private practice of law for their own purposes; that the defendant advertises to the public generally that its members are entitled to the services of its legal department, or as it has been called since 1929, its "Claim Department"; that a staff of competent and efficient attorneys is maintained by the defendant for the convenience of members requiring legal aid and advice and that membership in the defendant entitles members to the adjustment of automobile accident claims and assistance in all matters pertaining to the ownership and operation of automobiles; that it maintains a staff of investigators who are subject, at least in part, to the control and direction of the attorneys employed in the legal or claim department; that investigation of accidents involving property damage and personal injury is made by these investigators as well as by the attorneys employed in the legal or claim department; that accident reports and statements of witnesses are procured by and through the services of the investigators and attorneys employed in the legal or claim department; that claimants in accident cases who are members of the defendant consult these

attorneys respecting their rights and liabilities in accident cases; that the parties against whom claims are made by the member are notified by the legal or claim department that it has been consulted by a member of the defendant respecting an accident and it is suggested that the party call at the office of the defendant and discuss the claim in an attempt to effect an adjustment or settlement of the matter; that if such party does not call, or if he does call, and an adjustment or settlement is agreed upon, but is not carried out, such party is notified that the writer of the letter is forced to advise that failure to pay by a certain date will result in a law suit without further notice and such party is earnestly urged to avail himself of this final opportunity to settle the dispute and save time and expense; that the member is kept fully advised as to the progress or the lack of progress which is made; that accidents to members happening outside the city of Cleveland and in or near cities where defendant has branch offices are referred to the defendant's attorneys at such branch; that if such party employs an attorney to represent him and look after his interests and such attorney communicates with the defendant's legal or claim department, negotiations are then taken up with such other attorney; that after ascertaining all the facts possible regarding the accident, defendant's members are advised by the legal department as to whether or not they have a "good" case; that the legal or claim department at the Cleveland office now has about three hundred and fifty cases pending awaiting settlement, adjustment or other disposition; that during the year 1929, the legal or claim department received from 125 to 140 new cases each month, involving property damage and personal injuries; that many cases are settled or otherwise adjusted; that in one case in which the wrong-doer was apparently uncollectible, the member was told by one of the attorneys of a branch office that if the member could find out anything more favorable, the attorney would be pleased to handle the case in court for him; that at this time there are no cases pending in any court in which the legal or claim department is interested; that the members of the

legal or claim department appear in justice of the peace and mayors' courts in the interest of members who have been arrested for violation of the traffic laws and before magistrates in "speed trap" cases and prosecutions; that the members of the defendant do not pay for any of these services over and above the dues paid annually to the defendant but the services are rendered to the members by virtue of their membership; that the defendant has in its employ other attorneys who do not devote their entire time to the services of the defendant or its members, but who are paid an annual retainer and in addition are compensated for such legal or other services as they render when called upon by the defendant; that these services usually consist of assisting in the apprehension and prosecution of criminals, the drafting of local, state and national legislation and aiding in the enactment of such legislation.

At the hearing, and before any evidence had been offered, the defendant objected to the introduction of any testimony on the ground that the action is improperly commenced. This, of course raises the question whether or not the plaintiff can maintain the action, and whether injunction is the proper form of action.

The plaintiff is an attorney at law, admitted to the practice of the law in the state and federal courts.

What is the nature of the right conferred upon plaintiff by virtue of his admission to the practice of the law in the state courts?

No person shall be permitted to practice as an attorney and counsellor at law unless he has been admitted to the bar by order of the Supreme Court, or of two judges thereof. Upon application for admission to the bar he must be examined as to his fitness and qualifications; he must be of good moral character and possess a competent knowledge of the law, and have sufficient general learning; he must be at least twenty-one years of age; must be a citizen of the United States, or have declared his intention of becoming a citizen, and must have resided in the state at least one year next preceding the time of the examination. If upon such examination he is found to

be so qualified, "an oath of office shall be administered to him, and an order made on the journal that he be admitted to practice as an attorney and counsellor at law in all courts of record of this state."

What is the nature of the right so conferred?

Some courts have denominated such right a "franchise"; other courts, of equal respectability, have denied that such right is a franchise, in the proper or legal sense of the word.

Let us examine the authorities and determine, if we can, the nature of such right.

"Franchises are special privileges conferred by the government upon individuals and which do not belong to the citizens of the country generally, of common right." 26 C. J., 1008.

"Franchises have been construed to mean the positive rights or privileges without the possession of which the holder could not perform legally the public duties which, under the franchises, they were authorized to perform." 26 C. J., 1015, Sec. 11.

"Foreign insurance companies and associations, whether incorporated or not, before commencing business in this state are required to obtain a certificate of authority to do so from the Superintendent of Insurance.

"The certificate, so long as it remains in force, confers on the company or association receiving it, the right and privilege of carrying on its business in the state.

"The authority so granted, emanates from the state, and the privilege it confers is a franchise; and any company or association carrying on its business here, without having obtained such authority, is unlawfully exercising a franchise." *State, ex rel.,* v. *Ackerman et al.,* 51 Ohio St., 163.

"Where, by statute, the legal exercise of a right, which at common law was private, is made to depend upon compliance with conditions interposed for the security and protection of the public, the necessary inference is that it is no longer private, but has become a matter of public concern, that is a franchise." Ib., 194.

"The right to practice law may be taxed like other franchises." 6 C. J., 570, Sec. 15.

In Ohio the power to admit applicants to the bar has been vested by the legislature in the Supreme Court.

"One class of incorporeal hereditaments are franchises,

being certain privileges conferred by grant from government, and vested in individuals." 3 Kent's Com., 590. See also 26 C. J., 1016, Sec. 15. *Londoner* v. *People, ex rel.,* 25 Pac., 183.

"Franchise is a word of extensive signification; it is a liberty or privilege." *State* v. *City of Topeka,* 2 Pac., 589.

"An attorney or counsellor exercises a privilege or franchise." 20 Johns., 491.

"In the American states, a franchise is a privilege emanating from the government or sovereign power, and owes its existence to a grant." *Ry. Co.* v. *People, ex rel.,* 73 Ill., 542.

"A franchise is a special privilege conferred upon individuals or corporations by governmental authority to do something that cannot be done of common right and is an incorporeal hereditament." 2d Dec. Dig., "Franchises" —and cases cited.

"A special privilege granted by sovereign authority, either to an individual or a corporation, is a franchise." *State* v. *Water Co.,* 107 Wis., 441, 83 N. W., 697.

"An attorney does not hold an office or public trust, in the constitutional or statutory sense of that term, but is an officer of the court, exercising a privilege or franchise. He is, however, in a sense an officer of the state, with an obligation to the public no less significant than his obligation to his clients. His office is not, like ordinary public offices, subject to the will of the people creating it and burdened with whatever conditions that body may impose, but is held during good behavior, and· is one of which he can be divested only upon good cause shown and after proper judicial proceedings." 6 C. J., Attorney and Client, p. 568, Section 10.

*In re Garland,* 4 Wall. (U. S.), 333, Mr. ·Justice Field, speaking for the court, said:

"The attorney and counsellor being, by the solemn judicial act of the court, clothed with his office, does not hold it as a matter of grace and favor. The right which it confers upon him to appear for suitors, and to argue causes is something more than a mere indulgence, revocable at the pleasure of the court, or at the command of the legislature. It is a right of which he can only be deprived by the judgment of the court for moral or professional delinquency. They hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court after opportunity to be heard has been afforded."

Measured by all the standards laid down by courts and text-writers, the right conferred by the state upon persons to engage in the practice of law constitutes a franchise.

Will the unlawful invasion of such a franchise be prevented by a court of equity, or, to put it another way, will a court of equity protect such a franchise? If so, is injunction the proper remedy?

May the plaintiff, a private individual, the holder of such a franchise, maintain an action for the protection of such a franchise?

We feel that these questions must be answered in the affirmative.

"All grants or franchises ought to be so construed as to give them due effect, by excluding all contiguous competition, which would be injurious, and operate fraudulently upon the grant. The common law contained principles applicable to this subject, dictated by sound judgment and enlightened morality. It declared all such invasions of franchises to be nuisances, and the party aggrieved had his remedy at law by an action on the case for the disturbance, and in modern practice he usually resorts to chancery, to stay the injurious interference by injunction." 3 Kent's Com., 459.

"The license of an attorney to practice law constitutes him an officer of the court. The relation of the court and its attorneys to the people is one of high responsibility, and involves on the one hand absolute trust and confidence, and on the other absolute fidelity and honesty. In maintaining such a standard, both the court and the people are interested." *People* v. *Payson* (Ill.), 74 N. E., 386. *In re Day*, 54 N. E. 647. *Curtis* v. *Richards* (Idaho), 40 Pac., 57; 95 A. S. R., 134.

"Franchises are property and are frequently invested with the attributes of property generally." 26 C. J., 1019, Sec. 26, and cases there cited.

"Although it has been stated that it is doubtful whether the legislature can delegate the actual power to grant franchises, it is generally recognized that a franchise may be derived indirectly from the state through an agency to which the power is delegated. To this extent the power frequently has been delegated, and has been delegated even to other agencies than those of a legislative character; and a privilege is none the less a franchise because granted by the authority to whom the power has been delegated." 26 C. J., 1025, Franchises, Sec. 44.

"An interest which by law has been invested with the attributes of property generally is a franchise, not a mere license." 26 C. J., Franchises, p. 1018, Sec. 19.

"The practice of law is not a business open to all who wish to engage in it, but a personal right limited to a few persons of good moral character, with special qualifications duly ascertained and certified. The right to practice law is in the nature of a franchise from the state conferred only for merit; it is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts," *In re Co-Op. Law Co.*, 198 N. Y., 479; 92 N. E., 15; 139 A. S. R., 839. *Dworken* v. *Apt. House Owners Assn.*, 28 N. P. (N. S.), 118, affirmed by the Court of Appeals, 34 O. L. R. 234, 38 Ohio App., 265.

Perhaps the case most frequently cited by text-writers and courts as opposed to the doctrine that the right conferred by the state upon a person to practice a profession constitutes a franchise, is *State, ex rel.*, v. *Green*, 112 Ind., 462, 14 N. E., 352, in which the court says:

"A franchise is a privilege or immunity which can only exist by special grant of the government of the state, and is incapable of existing without such grant, and which the citizen cannot enjoy without legislative grant. It is essential to the character of a franchise, in the legal sense of the word, that it should be a grant from the sovereign authority, and in this country no franchise can be held which is not derived from the legislative power of the state. It cannot be held, we think, that the right of any person to practice his or her profession, under a license issued pursuant to a statute enacted by the legislature under the police power of the state, comes within any legal definition of a franchise."

The weight of authority is clearly opposed to the conclusion of the court reached in the above case.

"It is not necessary, 'to entitle the owner to relief in equity, that the franchise should be an exclusive franchise in the sense that the grant of another similar franchise to be exercised and enjoyed at the same place would be void.' The theory is 'that the defendant, who has no franchise, is acting in violation of law in operating without authority from the sovereign power, and that the owner of the franchise may complain of and restrain such illegal acts when they result in injury to his franchise, which,

*in the eye of the law, is property.* As to the one who is invading his rights without legal sanction, the franchise is an exclusive franchise, although the owner of it might not be entitled to any protection as against the granting of a similar franchise to another." 6 Pomeroy's Equity, Sec. 584, and cases cited.

"A franchise is entitled as property to protection under constitutional guarantees." 26 C. J., Franchises, p. 1022, Sec. 33.

"Courts of equity have jurisdiction by injunction to protect a franchise from unlawful invasion or disturbance, and will exercise such jurisdiction to secure the enjoyment of a franchise privilege or to protect against an invasion of such franchise."

"Reason for Rule: The value of such a right, or the cost of this unlawful disturbance, cannot be reduced to a pecuniary measure. The ground of the exercise is usually in prevention of irreparable injury, or such as cannot be adequately estimated in damages at law; at other times, the avoidance of a multiplicity of suits, and again by abatement of annoyance in the nature of a legal nuisance. Another controlling reason for interference by equity in such cases is, that the public at large have an interest in the protection of such a privilege as well as the parties particularly interested." 26 C. J., Franchises, p. 1047, Sec. 126, and note (a). High on Injunctions, Sec. 897, *et seq.*

A franchise to operate a ferry; the infringement of a copyright or a patent, and many other rights of a similar nature, many of which are not more, if as, valuable as the right to practice law, are protected by injunction and the authorities are unanimous in so holding.

The right to practice law is very valuable to the one possessing such right; it is a right acquired only after long study; and conferred by the state only after the closest investigation and rigid examination of the applicant as to his moral and intellectual fitness to be clothed with such right; it is a right in which the public is deeply interested as to the manner in which it is exercised; and after the right has been conferred, the state, through the public authorities, hold the possessor of the right to a strict accountability as to the manner in which he uses this right and sees to it that he does not abuse it, or impose upon the public or his clients, and if he does do so

the state deprives him of such right. Is the holder of such a right so obtained, and one held to such strict accountability to be denied protection in the possession and use of such right? Surely the state ought not be permitted to demand so much and then refuse protection to the holder in the possession and use of a right to be conferred. If it may then the holder of such right is denied the equal protection of the laws guaranteed by federal and state constitutions. Such is not the law.

The individual who possesses such right is the owner and holder of a franchise and may maintain an action for the protection of the right; and the remedy for its unlawful invasion is by way of injunction.

What constitutes the practice of law has been defined by lawyers, Bar Associations, courts, text-writers, legislatures and other bodies. The Legislature of Ohio has not, as yet, adopted a definition of that phrase. During the last session of the Legislature of Ohio a bill was introduced for the purpose of defining the practice of law, but it was not enacted into law. The definition proposed, was:

"The appearance of an advocate in a representative capacity, or the drawing of papers, pleadings or documents, or the performance of any act in such capacity, in connection with proceedings, pending or prospective, before any court of record, commissioner, referee, or any body, board, committee or commission constituted by law, or having authority to settle controversies; or, for a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, advising or counselling another as to the law relating to any subject or as to rights under the law; or, for a consideration, direct or indirect, constructing, preparing, drawing or assisting in the construction, preparation or drawing of any will, agreement, deed, mortgage, lease or other instrument or document affecting or relating to secular rights."

Section 1698 of the General Code of Ohio, reads in part:

"No person shall be permitted * * * to commence, conduct or defend any action, or proceeding, in which he is not a party concerned, either by using or subscribing his own name, or the name of another person, unless he has been admitted to the bar * * *."

Section 1706 of the General Code of Ohio, provides in part:

"No judge of any court of record in Ohio, while holding commission as such judge, shall engage in the practice of law during his term of office, either by appearing in court, by acting as advisory, or consulting counsel for attorneys, or others by accepting employment, or acting as an attorney, solicitor, collector, or legal adviser for any bank, corporation, loan or trust company, or otherwise engage in the practice of law in Ohio in or out of the courts."

"The practice of law is not limited to the conducting of cases in court, but includes persons acting professionally in legal formalities, negotiations, or proceedings by authority of their client; and one prohibited from acting as an attorney by a judgment of disbarment practices in violation thereof, by contracting for a fee to obtain the release of one sentenced to the workhouse and serving sentence and endeavoring to induce a magistrate to discharge the prisoner on payment of the fine, though the same services might have been rendered by one not a lawyer * * *. It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts." *In re Duncan,* 83 S. C., 186; 65 S. E., 210.

"Drafting and supervising the execution of wills is practicing law." *People* v. *Trust Co.,* 167 N. Y. S., 767.

"Drawing bills of sale and chattel mortgages, with the advice necessarily attendant, is included in the term 'Practicing Law.'" *People* v. *Title Guarantee Co.,* 168 N. Y. S., 278.

"Practicing Law: To carry on the business of an attorney at law. * * * To make it one's business to act for and by the warrant of others in legal formalities, negotiations or proceedings. It is not confined to performing services in an action or proceeding pending in courts of justice, but in a larger sense includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured, although such matters may or may not be depending in court." 49 C. J., page 1314, and cases cited.

"It is quite certain that the practice of law is by no means limited to appearing in court or to advising and assisting in the conduct of litigation. That, under modern conditions, constitutes but a fraction of the duties which lawyers are constantly called upon to perform for clients." Costigan Ethics, 57.

"The practice of an attorney at law is not confined alone

to the courts. It involves advice, consultations and legal conclusions that have their habitat in the law office or in the regular place of business of the attorney at law." *Doyle v. Byers*, 25 O. L. R., 435.

"There can be no doubt that the giving of legal advice 'regarding commercial matters' is engaging in the practice of law." 6 App. Cases (Tenn.), 87.

"In a larger sense the practice of law includes legal advice and counsel and the prepration of legal documents and contracts by which legal rights are secured, although such matters may or may not be pending in court." *Ely v. Miller*, 7 Ind. App., 529; 34 N. E., 386.

"It is common knowledge that a large, if not the greater part of the work of the bar today is out of court, or office work. Counsel and advice, the drawing of agreements * * * are activities which have long been classed as law practice." *People v. Alfani*, 227 N. Y., 334.

"The practice of law is any service, involving legal knowledge whether of representation, counsel or advocacy, in or out of court, rendered in respect to the rights, duties, obligations, liabilities or business relations of the one requesting the service." American Bar Assn. Annual Rep., 1927, page 382.

"Practicing as an attorney or counsellor at law is the giving of advice or rendition of any sort of service by any person, firm or corporation in or out of court to any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill." *People, ex rel. State and Chicago Bar Assn., v. Bank.* (pending case).

"Persons acting professionally in legal formalities, negotiations, or proceedings by the warrant or authority of their clients may be regarded as attorneys at law within the meaning of that designation as used in this country." *Savings Bank v. Ward*, 100 U. S., 195.

The following acts and practices have been held to be "practicing law":

"The practice of a corporation, which, for a consideration, however denominated or paid, solicits, enters into or performs any undertaking with a customer, member, subscriber, policy-holder, or the like, to defend, through an attorney, such customer, member, subscriber, policy-holder, when arrested for the violation of a criminal statute or municipal ordinance."

"The practice of any corporation of preparing for or furnishing to their customers, for a stipulated fee, deeds,

mortgages, chattel mortgages, opinions of title, contracts or any other documents of a legal nature."

"The practice of a corporation or association, ostensibly not for profit, but in reality for the pecuniary benefit of certain persons other than the general membership, which enters into a service contract with its members or subscribers, and undertakes for a consideration, howsoever denominated or paid to furnish advice or service to its members or subscribers by an attorney retained or employed by it."

"Whoever,

(a) In a representative capacity appears as an advocate or draws papers, pleadings or documents, or performs any act in connection with proceedings pending or prospective before a court of a justice of the peace, or a body, board, committee, commission or officers constituted by law or having authority to take evidence in or settle or determine controversies in the exercise of the judicial power of the state or subdivision thereof; or

"(b) For a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, advises or counsels another as to secular law, or draws or procures or assists in the drawing of a paper, document or instrument affecting or relating to secular rights; or

"(c) For a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, does any act in a representative capacity in behalf of another tending to obtain or secure for such other the prevention or the redress of a wrong or the enforcement or establishment of a right; or

"(d) As a vocation, enforces, secures, settles, adjusts or compromises defaulted, controverted or disputed accounts, claims or demands between persons with neither of whom he is in privity or in the relation of employer and employee in the ordinary sense; is practicing law * * *." Section 6248, Alabama Code.

The legislatures of several other states have defined the practice of law, and many other courts and Bar Associations have defined the phrase, but the above are sufficient for the purposes of this case.

In rendering the service which it is found the defendant, through its legal, or claim department, has rendered to its many members, has the defendant, The Cleveland Automobile Club, engaged in the practice of law as such term is used in the Statutes of the State of Ohio?

It is unquestionably true that a very large part of such

services does not constitute "practicing law" within the statutory meaning of such phrases, but, in our judgment, in the following particulars, the defendant has engaged in the practice of law:

(a) By advising members as to their legal rights in civil matters in which members have been involved.

(b) By carrying on negotiations which require the application of law to facts.

(c) By communicating with and endeavoring to adjust claims with attorneys representing persons against whom a member of the defendant has a claim on account of an automobile accident.

(d) In making investigations for the purpose of ascertaining the facts relative to such accidents with a view of advising members of the defendant to their legal rights.

(e) By advertising and representing that said defendant maintains a legal department for the purpose of advising its members of any civil legal matters pertaining to or in connection with the operation of automobiles or other motor vehicles exclusively owned or operated by the members of the defendant.

It is therefore ordered, adjudged and decreed that said defendant, The Cleveland Automobile Club, its officers, directors, agents and employees, be and they are hereby perpetually enjoined from engaging in any of the activities or performing any of the services set forth and enumerated in paragraphs a, b, c, d, and e.

It is further perpetually enjoined from soliciting membership under any agreement or condition whereby it agrees to furnish legal services or advice to any member of said defendant company.

And it is further ordered and adjudged that the plaintiff recover from said defendant his costs herein.

Exceptions may be noted for both plaintiff and defendant.