STATE, RESPONDENT, *v.* DODD, APPELLANT.

(No. 3,521.)

(Submitted May 8, 1915. Decided June 8, 1915.)

[149 Pac. 481.]

*Physicians and Surgeons—Osteopaths—Practicing Medicine—Constitution—Equal Protection of Laws—Statutes—Presumptions.*

Judgment—What does not Constitute.
    1. A recital in the minutes of a district court, in a prosecution for practicing medicine without a license, that "the court ordered that the defendant be punished by paying a fine of $300," is not a "judgment."

Physicians and Surgeons—Practice of Medicine—Statutes—Constitution.
    2. *Held,* that the Act regulating the practice of medicine (Rev. Codes, secs. 1585–1593) is not unconstitutional as denying the equal protec-

tion of the laws, in that it discriminates in favor of osteopathic prac-
titioners.

[As to equal protection of laws, see note in 25 Am. St. Rep. 873.]

Constitution—Nature of Instrument.
3.    The state Constitution is a limitation upon power, and in the
absence of some restriction the legislature is free to enact any measure
which does not infringe the supreme law of the land.

Same—Statutes—Validity—Presumptions.
4.    Legislation which makes a reasonable classification of subjects is
valid, and, in the absence of a contrary showing on the face of the
statute, will be presumed reasonable.

Physicians and Surgeons—Osteopaths—Statutes.
5.    Section 1605, Revised Codes, held not to authorize an osteopath
to practice medicine or surgery, but to confine his practice to treatment
by the use of the hands or mechanical appliances.

[As to osteopathy as practice of medicine, see note in 98 Am. St.
Rep. 742.  As to application of statutes regulating practice of medicine
to persons giving special kinds of treatment, see notes in 3 L. R. A.
(n. s.) 762; 24 L. R. A. (n. s.) 103; 25 L. R. A. (n. s.) 1297; 33
L. R. A. (n. s.) 179.]

*Appeal from District Court, Cascade County; J. B. Leslie,
Judge.*

W. E. DODD was convicted of practicing medicine without a
license.  From the judgment and order denying a new trial
he appeals.  Affirmed.

Cause submitted on briefs of counsel.

*Mr. C. H. Benton,* for Appellant.

Legislation which discriminates between persons in allow-
ing different privileges to one not given to another under the
same conditions, or subjecting one person to different restric-
tions than are allowed to another in the same class, is invalid.
The same principle is involved in this case as is decided in
*State* v. *Cudahy Packing Co.,* 33 Mont. 179, 114 Am. St. Rep.
804, 8 Ann. Cas. 717, 82 Pac. 833.  In the *Cudahy Case* farm-
ers and fruit-growers who seek a market for the product of
their labor, and merchants and commission men, are held to be
of the same class and following the same pursuit, and for the
reason that persons engaged in horticultural and agricultural
pursuits are exempted from the provisions of the law, it was
held unconstitutional.  Quoting *Yick Wo* v. *Hopkins* 118 U. S.

356, 30 L. Ed. 220, 6 Sup. Ct. Rep. 1064, it is there said that the law must so adjust itself as to operate equally upon the individuals constituting the class whose conduct it intends to control. The class section 1591, Revised Codes, intends to control is that class who are engaged in the practice of medicine. It declares that any person who professes "to cure, treat, relieve or palliate any ailment, disease of infirmity of the mind or body" shall be regarded as practicing medicine. Whatever may be the name adopted, a person engaged in healing art, regardless of the agency employed, is engaged in the practice of medicine. (*Smith* v. *People*, 51 Colo. 270, 36 L. R. A. (n. s.) 158, 117 Pac. 612; *Bragg* v. *State*, 134 Ala. 165, 58 L. R. A. 925, 32 South. 767; *Little* v. *State*, 60 Neb. 749, 51 L. R. A. 717, 84 N. W. 248; *State* v. *Gravett*, 65 Ohio St. 289, 87 Am. St. Rep. 605, 55 L. R. A. 791, 62 N. E. 325; *Eastman* v. *People*, 71 Ill. App. 236; *Newman* v. *State*, 58 Tex. Cr. 223, 124 S. W. 956; *Bandel* v. *Department of Health*, 193 N. Y. 133, 21 L. R. A. (n. s.) 49, 85 N. E. 1067; *Harding* v. *People*, 10 Colo. 387, 15 Pac. 727; *Bibber* v. *Simpson*, 59 Me. 181; *Davidson* v. *Bohlman*, 37 Mo. App. 576; *People* v. *Phippin*, 70 Mich. 6, 37 N. W. 888; *State* v. *Heffernan*, 28 R. I. 20, 65 Atl. 284; *State* v. *Van Doran*, 109 N. C. 864, 14 S. E. 32.)

*Mr. D. M. Kelly,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendant was convicted of practicing medicine without first having obtained a certificate from the state board of medical examiners. The notice of appeal recites that defendant has appealed from the judgment and from an order denying his motion for a new trial.

If any judgment has ever been rendered or entered in this action, the record fails to disclose the fact. The recital in the [1] minutes, "The court ordered that the defendant be punished

by paying a fine of three hundred dollars ($300)," is not a judgment. Every question which appellant seeks to have reviewed, however, arises upon the appeal from the order denying his motion for a new trial.

The principal contention made is that the statute regulating the practice of medicine is unconstitutional. Section 1587 of that Act provides that any person wishing to practice medicine or surgery in this state shall first secure a certificate from the state board of medical examiners. Section 1591 provides that every person practicing medicine or surgery without such certificate shall be guilty of a misdemeanor. The same section further defines "practicing medicine or surgery" and contains this proviso: "Nothing in this section shall be construed to restrain or restrict any legally licensed osteopathic practitioner * * * under the laws of this state."

The right of the state in the exercise of its police power to regulate the practice of medicine by appropriate legislation is conceded, but it is insisted that section 1591 is arbitrary and unreasonable class legislation and not a valid police [2] regulation for that reason. Counsel for appellant insists that the effect of that section, with the proviso quoted, is to deny to every person, except osteopaths, the right to practice medicine or surgery in Montana without a certificate from the state board of medical examiners, and that, in excepting licensed osteopaths from the operation of its provisions, those persons thus favored are free to engage in the practice of medicine or surgery without having to submit to the ordeal of an examination and without having the certificate required of every other one who seeks to engage in the like practice. If the construction thus sought to be placed upon the language of section 1591 is justified, we might readily assent to the conclusion that the classification made is an arbitrary one, and that the case presented upon this appeal falls within the rule announced in *State* v. *Cudahy Packing Co.*, 33 Mont. 179, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 833, and that the statute in its operation denies to the appellant the equal

protection of the laws. In assuming, however, that section 1591 permits an osteopath to practice medicine without a certificate from the state board of medical examiners, counsel for appellant errs, and with the fall of this, his fundamental premise, goes his entire argument.

We shall not trace the history of the statute regulating the practice of medicine in this state from its origin. As it appeared in the Political Code of 1895, sections 600–608, it contained no proviso or exception in favor of osteopaths or others. It was a general statute of uniform operation, which required every person who wished to practice medicine or surgery in this state to submit to an examination before the state board of medical examiners and secure a certificate from that board. In 1901 an Act was passed to regulate the practice of osteopathy. (Laws 1901, p. 48.) Section 11 of that Act declared that the practice of osteopathy shall not be deemed the practice of medicine or surgery, within the meaning of the law regulating the practice of medicine or surgery. In 1905 the Act of 1901 was superseded by a more elaborate measure upon the same subject, section 13 of which contained the same provision as section 11 of the Act of 1901. (Laws 1905, Chap. 51, p. 106.)

In the Act of 1901, above, the practice of osteopathy was not defined specifically, but the meaning of the phrase was so well understood that the legislature was competent to say that, whatever it might comprehend, it did not include the practice of medicine or surgery. This authority thus assumed by the legislature is challenged, and it is urged that it is beyond the scope of law-making power to say that the performance of acts tending to cure, treat, relieve, or palliate any ailment, disease or infirmity of the human mind or body is not the practice of medicine or surgery. Much of this argument fails of its mark. In the first instance, we approach the consideration of the subject confronted with the well-established rule that our Constitution is a limitation upon power, particularly legislative power, and that, in the absence of some constitutional restriction, the legislature is free to enact any measure which

does not infringe the supreme law of the land. (*State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078; *Missouri River P. Co.* v. *Steele,* 32 Mont. 433, 80 Pac. 1093.) There is not any provision of our Constitution which denies to the legislature this right, and for that reason we might content ourselves with saying that it was competent for our lawmakers to define the practice of osteopathy in this negative manner. But for an equally cogent reason appellant's position is not maintainable. In the Code of 1895 the practice of medicine or surgery was declared to comphrehend certain acts. In defining osteopathy as not including the practice of medicine or surgery, the legislature did nothing more than to say that the osteopaths were excluded from the field of operations determined by the definition of the practice of medicine or surgery. Osteopaths were authorized to practice osteopathy, but not to practice medicine or surgery as that practice was defined. By an Act of the Tenth Legislature Assembly, certain sections of the Act of 1905 were amended and a comprehensive definition of the practice of osteopathy given. (Laws 1907, Chap. 112, p. 283.) The same session amended section 606 of the Political Code of 1895 and inserted the proviso to which exception is taken. (Laws 1907, Chap. 101, p. 250.) The statutes regulating the practice of medicine were brought forward into the Revised Codes as sections 1585–1593, and those relating to the practice of osteopathy as sections 1594–1606. When the proviso was inserted in what is now section 1591, the legislature understood that the practice of osteopathy (a) did not comphrehend the practice of medicine or surgery, and (b) that it was already regulated and controlled by appropriate statutes enacted pursuant to the police power of the state. The only effect, then, of this legislation, has been to classify all those engaged in the healing art into two classes: (1) Physicians and surgeons, or those engaged in the practice of medicine or surgery, and (2) osteopaths, or those devoted to the practice of osteopathy. [4] That legislation which makes a reasonable classification of subjects is not open to any constitutional objection upon

that ground, has been determined so often that argument upon the matter may well be deemed foreclosed. (*State* v. *Woodman,* 26 Mont. 348, 67 Pac. 1118; *Cunningham* v. *Northwestern Imp. Co.,* 44 Mont. 180, 119 Pac. 554; *State* v. *Hammond Packing Co.,* 45 Mont. 343, 123 Pac. 407.)   In the absence of anything appearing to the contrary upon the face of the statute, the classification made by the legislature will be presumed reasonable. (*Cunningham* v. *Northwestern Imp. Co.,* above; *Quong Wing* v. *Kirkendall,* 39 Mont. 64, 101 Pac. 250.)

In the present instance there is not any suggestion that such a classification as was undertaken above is unreasonable.   The proviso in section 1591 is a harmless piece of legislation.   It did not affect the status of osteopathic practitioners in the least. They were confined thereafter, as theretofore, to the practice of osteopathy and forbidden to practice medicine or surgery without the certificate from the state board of medical examiners required of everyone who seeks to engage in such practice.

Neither has the legislature, by enacting section 1605, Revised Codes, recognized osteopathy as including or included within the practice of medicine.   That section does not authorize an osteopath to "treat, cure, alleviate or relieve any disease of the mind or body *by any treatment,*" as counsel for appellant contends in his brief.   The language of the section cannot be tortured to convey such meaning.   The section provides, among other things: "Every person shall be deemed practicing osteopathy within the meaning of this Act who shall,  *  *  *  (b) *  *  *  treat, cure, alleviate or relieve any ailment or disease of either mind or body, or cure or relieve any fracture or misplacement or abnormal condition, or bodily injury or deformity, by any treatment, or manipulation or method of manipulating a human body or any of its limbs, muscles, or parts, *by the use of the hands, or mechanical appliances,* in an effort or attempt to relieve any pressure, obstruction misplacement or defect, in any bone, muscle, ligament, nerve, vessel, organ or part of the body."   Within the entire scope of his practice, the

osteopath is confined to treatment *by the use of the hands or mechanical appliances.*

The other assignments have been considered, but they do not merit special mention.

We find no error in the record. The pretended appeal from the judgment is dismissed, and the order denying a new trial is affirmed.                                                                  *Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.