## STATE, RESPONDENT, *v.* HOPKINS, APPELLANT.

(No. 3,980.)

(Submitted June 12, 1917. Decided July 2, 1917.)

[166 Pac. 304.]

*Osteopathy—Chiropractic—Practicing Without License—Constitutional Law—Statutes—Title—Class Legislation—Liberty of Occupation—Monopolies—Information—Evidence.*

Osteopathy—Chiropractic—Constitution—Statutes—Defective Title.

1. *Held,* in a prosecution of a chiropractor for practicing osteopathy without first obtaining a license, that the statute under which the prosecution was had (Rev. Codes, secs. 1594–1606), is not repugnant to section 23, Article V of the state Constitution on the ground, as claimed, that there is nothing in the titles of the Acts constituting the statute regulating the practice of osteopathy indicating an intention to include "chiropractic"; the latter, like the former, having to do with the art of healing by the use of the hands, falls within the definition of "osteopathy," and must be held to have been intended as included within it.

[As to statutes regulating the practice of medicine and to whom they are applicable, see note in 98 **Am. St. Rep.** 742.]

Same—Constitution—Class Legislation.

2. *Held,* further, that the provisions of the statute above are not invalid as arbitrary and unreasonable class legislation contrary to section 1 of the Fourteenth Amendment to the Constitution of the United States, guaranteeing the equal protection of the laws, the contention that the legislation permits a licensed practitioner of medicine or surgery to practice osteopathy without procuring a license, whereas it prohibits every one else from doing so, being untenable.

Same—Denial of Right to Engage in Occupation.

3. The statute above (Rev. Codes, secs. 1594–1606) *held* not to make an arbitrary classification denying the right of citizens to engage in a lawful occupation, and therefore not an abuse of the police power of the state.

Same—Chiropractic—Examination—Not Unreasonable Requirement.

4. Chiropractic being osteopathy under another name, the requirement that before a chiropractor may be permitted to practice he shall be examined upon the theory and practice of osteopathy is not unreasonable.

Same—Monopolies.

5. Since under the Osteopathic Practice Act anyone possessing the necessary qualifications prescribed to engage in the practice of healing by the use of the hand, whether he style himself "osteopath" or "chiropractic," may engage in the practice and earn his livelihood by this means, upon securing a license, it is not objectionable as conferring a monopoly on the school of osteopathy.

Same—Practicing Without License—Evidence.

6. The record of the names of applicants for license, required by section 1595, Revised Codes, to be kept by the secretary of the board of osteopathic examiners, showing that defendant had never applied for a license or temporary certificate was, in the absence of contradic-

tion, sufficient to support the charge that he had been practicing without a license.

Same—Information—Negativing Exception.
   7.   An information charging one with practicing osteopathy without first obtaining a license need not allege that he had not procured a temporary certificate permitting him to practice, this being a matter of defense.

Same—Physicians and Surgeons—License—Evidence.
   8.   Assuming (but not deciding) that an information charging the practice of osteopathy without a license must set forth that defendant was not a duly licensed practitioner of medicine or surgery, failure of the register of applicants to the board of medical examiners for certificate to practice required by section 1586, Revised Codes, to be kept by the board and made *prima facie* evidence of all matters therein recorded, to show that defendant·had applied for license, was sufficient evidence that he had not been licensed to practice medicine or surgery.

*Appeal from District Court, Lewis and Clark County; R. Lee Word, Judge.*

W. H. HOPKINS was convicted of a misdemeanor committed by practicing osteopathy without obtaining a license, and appeals from the judgment and an order denying him a new trial.

*Mr. Wellington D. Rankin,* for Appellant, submitted a brief and argued the cause orally.

If the legislative intent was to include within the meaning of sections 1594–1606 of our Political Code one who is engaged as a chiropractor, then to that extent the sections are unconstitutional because repugnant to Article V, section 23 of the Constitution of the state of Montana. There was nothing in the title of the Act regulating the practice of osteopathy, when originally enacted, to indicate that it was intended to affect "chiropractors." The testimony shows that the defendant held himself out as a chiropractor and not as one engaged in the practice of osteopathy. The relief was not administered by any manipulation of the body or any of its parts, but by placing one hand on the back and striking it with the other. Adjustment·of the vertebrae by a chiropractor is accomplished by a direct thrust and not by manipulation of the body. "Chiropractic" differs from all other methods and systems of treatment and is a separate, distinct and systematized profession. The language of Judge West in his dissenting opinion in the

case of *State* v. *Johnson,* 84 Kan. 411, 41 L. R. A. (n. s.) 539, 114 Pac. 390, is pertinent here.

The information alleged that the defendant was not a physician or surgeon, and, of course, this was a necessary and material allegation and one which should have been proved beyond a reasonable doubt before a conviction could be had. (*State* v. *Brand,* 153 Mo. App. 27, 131 S. W. 923; *State* v. *Schweiter,* 27 Kan. 499; *State* v. *Hellscher,* 150 Mo. App. 230, 129 S. W. 1035; *State* v. *Carlisle,* 22 S. D. 529, 118 N. W. 1033.) In fact, the court instructed the jury that before they could find the defendant guilty, they must find that the defendant was not a physician or surgeon licensed under the laws of Montana. The record fails to show that the defendant was not such a physician, and therefore the motion for a directed verdict should have been granted.

The statutes governing the practice of osteopathy are unconstitutional and void because repugnant to the Fourteenth Amendment to the Constitution of the United States.

(A) It is unreasonable class legislation denying to osteopaths the equal protection of the laws. By reason of the proviso in the Act a legally licensed physician is privileged to practice osteopathy without a license so to do, in so far as the treatment of his patients in the practice of his profession involves the treatment or manipulation or method of manipulating a human body or any of its limbs, muscles or parts, by the use of the hands or mechanical appliances. It clearly is unreasonable class legislation, and denying to those, not legally licensed physicians, who desire to practice osteopathy the equal protection of the laws. (See *State* v. *Dodd,* 51 Mont. 100, 149 Pac. 481.)

(B) It is an arbitrary classification denying the right to engage in a lawful occupation, and is an abuse of the police power of the state. (*Dent* v. *West Virginia,* 129 U. S. 114, 32 L. Ed. 623, 9 Sup. Ct. Rep. 231; *State* v. *District Court,* 26 Mont. 121, 66 Pac. 754.)

(C) It is an attempt to restrict all healing of the drugless cults to a single school, and thereby confer a monopoly upon the osteopaths. (*State* v. *Biggs,* 133 N. C. 729, 98 Am. St. Rep. 731, 64 L. R. A. 139; *State* v. *McKnight,* 131 N. C. 717, 59 L. R. A. 187, 42 S. E. 580; *Nelson* v. *State Board of Health,* 22 Ky. Law Rep. 438, 57 S. W. 501; *Post* v. *United States,* 135 Fed. 1, 70 L. R. A. 989, 67 C. C. A. 569.)

*Mr. S. C. Ford,* Attorney General, *Mr. Frank Woody,* Assistant Attorney General, and *Mr. Joseph P. Donnelly,* for Respondent, submitted a brief; *Mr. Donnelly* argued the cause orally.

The United States supreme court and the courts of last resort in various states have almost without exception upheld the power of the legislature to pass laws of this kind, and have called attention in no uncertain terms to the great need of protection of the afflicted from incompetence, ignorance and quackery, and of the poor from avarice and unscrupulous greed for gain. (*People* v. *Reetz,* 127 Mich. 87, 86 N. W. 396; *Reetz* v. *Michigan,* 188 U. S. 505, 47 L. Ed. 563, 23 Sup. Ct. Rep. 390; *Dent* v. *West Virginia,* 129 U. S. 114, 32 L. Ed. 623, 9 Sup. Ct. Rep. 231; *Hawker* v. *New York,* 170 U. S. 189, 42 L. Ed. 1002, 18 Sup. Ct. Rep. 573; *Bragg* v. *State,* 134 Ala. 165, 58 L. R. A. 925, 32 South. 767; *Parks* v. *State,* 159 Ind. 211, 59 L. R. A. 190, 64 N. E. 862; *State ex rel. Burroughs* v. *Webster,* 150 Ind. 607, 41 L. R. A. 212, 50 N. E. 750; *State* v. *Adkins,* 145 Iowa, 671, 124 N. W. 627; *State* v. *Wilhite,* 132 Iowa, 226, 11 Ann. Cas. 180, 109 N. W. 730; *People* v. *Gordon,* 194 Ill. 560, 88 Am. St. Rep. 165, 62 N. E. 858; *Scholle* v. *State,* 90 Md. 729, 50 L. R. A. 411, 46 Atl. 326; *Little* v. *State,* 60 Neb. 749, 51 L. R. A. 717, 84 N. W. 248; *State* v. *Marble,* 72 Ohio St. 21, 106 Am. St. Rep. 570, 2 Ann. Cas. 989, 70 L. R. A. 835, 73 N. E. 1063; *State* v. *Yegge,* 19 S. D. 234, 9 Ann. Cas. 202, 69 L. R. A. 504, 103 N. W. 17; *Ex parte Collins,* 57 Tex. Cr. 2, 121 S. W. 501; *Brooks* v. *State,* 88 Ala. 122, 6 South. 902; *O'Neil* v. *State,* 115 Tenn. 427, 3 L. R. A. (n. s.) 762, 90 S. W. 627; *Witty* v. *State,* 173 Ind.

404, 25 L. R. A. (n. s.) 1297, 90 N. E. 627; *Commonwealth* v. *Jewelle,* 199 Mass. 558, 85 N. E. 858; *State* v. *Pollman,* 51 Wash. 110, 98 Pac. 88; *State* v. *Oredson,* 96 Minn. 509, 105 N. W. 188; *Germany* v. *State,* 62 Tex. Cr. 276, Ann. Cas. 1913C, 477, 137 S. W. 130; *State* v. *Doerring,* 194 Mo. 398, 92 S. W. 489; *State* v. *Greiner,* 63 Wash. 46, 114 Pac. 897; *State* v. *Smith,* 233 Mo. 242, 33 L. R. A. (n. s.) 179, 135 S. W. 465; *State* v. *Dodd,* 51 Mont. 100, 149 Pac. 481.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant was convicted of a misdemeanor committed by engaging in the practice of osteopathy "under and by the name of chiropractic or chiropractor" for compensation without first having obtained a license from the state board of osteopathic examiners. He has appealed from the judgment and an order denying him a new trial.

1. The first contention is that the conviction cannot be sustained because, if it was the intention of the legislature, [1] in enacting the provisions of the Revised Codes relating to the practice of osteopathy, to include in their meaning one engaged in practicing of healing as a chiropractor, they are repugnant to section 23, Article V, of the Constitution of Montana, and therefore void in this: That there is not found in the title of the bills by which these provisions were enacted any mention of chiropractors or those engaged in the practice of chiropractic. A brief history of this legislation will be found in *State* v. *Dodd,* 51 Mont. 100, 149 Pac. 481. By reference to the Acts of 1905 (Laws 1905, Chap. 51, p. 106), and 1907 (Laws 1907, Chap. 112, p. 283) the purpose of the legislature becomes apparent. The Act of 1905 supplanted the original Act of 1901 on the same subject. Neither of these defined the term "osteopathy" or the expression "practicing osteopathy," the legislature assuming that both the term and the expression were well understood and did not include the practice of medicine or surgery. The purpose of the Act of 1907 was to amend sections 8 and 12 of the

law of 1905 by increasing the penalty for a violation of it, and to define specifically the expression "practicing osteopathy" in order to indicate clearly the meaning of it and to distinguish it from the practice of medicine or surgery which are regulated by other provisions on the subject. (Rev. Codes, secs. 1585–1593.) The Acts of 1905 and 1907 appear in the Revised Codes as sections 1594–1606, inclusive; sections 1601 and 1605 being the amended sections. Upon a comparison of the definition of the expression "practicing osteopathy" found in section 1605 with the accepted definition of the expression "practicing chiropractic," it is clear that the practice of the latter comes within the purview of the legislation. Section 1605 reads: "Every person shall be deemed practicing osteopathy within the meaning of this Act who shall (a) attend to, or use in connection with his or her name the words 'Doctor of Osteopathy, or Diplomat of Osteopathy, or Osteopath, or Osteopathist, or Osteopathic Practitioner, or Osteopathic Physician,' or words of like import, or any abbreviation thereof, or the letters 'D. O.,' or who shall (b) profess publicly to, or who shall, either on his own behalf, in his own name, or in his trade name, or in behalf of any other person, corporation, association, partnership, either as manager, bookkeeper, practitioner, or agent, treat, cure, alleviate or relieve any ailment or disease of either mind or body or cure or relieve any fracture or misplacement or abnormal condition or bodily injury or deformity, by any treatment, or manipulation or method of manipulating a human body or any of its limbs, muscles or parts, by the use of the hands, or mechanical appliances, in an effort or attempt to relieve any pressure, obstruction, misplacement or defect, in any bone, muscle, ligament, nerve, vessel, organ or part of the body, after having received, or with the intent or expectation of receiving therefor either directly or indirectly any bonus, gift or compensation whatsoever: Provided, however, that nothing in this section shall be construed to restrain or restrict any legally licensed physician or surgeon in the practice of his profession."

In Webster's New Standard Dictionary "chiropractic" is defined as: "A system of the practice of adjusting the joints, especially of the spine, by hand for the curing of disease." We gather from the brief of counsel that one who practices the system is technically designated as a "chiropractor."

The legislature in formulating the definition in section 1605, *supra,* manifested the intention to make the regulations applicable to the practice of osteopathy equally applicable to every branch of the healing art by the use of the hands, by whatever name the practitioner might call himself or apply to the system. Since this definition is broad enough to include the system of chiropractic, the inference is necessary that the legislature intended to include it, whether it was a matter of common knowledge or not.

The title of the Act of 1905 is the following: "An Act to regulate the practice of osteopathy in the state of Montana, and to license osteopaths to practice in the state, and to establish a board of osteopathic examiners, and to punish persons violating the provisions of this Act, and to repeal House Bill No. 38 of the 7th Legislative Assembly of the state of Montana, approved Feb. 26, 1901."

The following is the title of the amendatory Act: "An Act to amend sections 8 and 12 of chapter 51, Laws of 1905, relating to the practice of osteopathy contrary to law in the state of Montana, and providing a penalty therefor, and defining what evidence shall be deemed sufficient to constitute the practice of osteopathy."

The provision of the Constitution invoked by counsel has so frequently been considered and its scope and meaning declared by this court that it would be a work of supererogation to enter upon a discussion of it again. In brief, it may be stated that its purpose is to prevent fraud and deception in the enactment of legislation, and to this end to require that every bill introduced in the legislature must relate to a single subject which shall be so clearly expressed in a title prefixed to it that both the members of the legislature and the public may understand

the object to be accomplished by it. (*State* v. *Anaconda C. Min. Co.*, 23 Mont. 498, 59 Pac. 854; *State* v. *McKinney*, 29 Mont. 375, 1 Ann. Cas. 579, 74 Pac. 1095, and cases cited; *Yegen* v. *Board of County Commrs.*, 34 Mont. 79, 85 Pac. 740.)

The title of the Act of 1905 discloses that the subject of the proposed legislation was the regulation of the practice of osteopathy. The title of the amendatory Act also refers exclusively to the practice of osteopathy, and indicates that it was the intention of the legislature to define what that expression was intended to include. That this definition includes the practice of chiropractic and applies to chiropractors is no valid objection to it. It meets the requirement of the provision of the Constitution relied on and is valid.

2. We notice next the contention that these provisions are [2] invalid because they are arbitrary and unreasonable class legislation. It is said that the proviso in section 1605 permits a regularly licensed practitioner of medicine or surgery to practice osteopathy without a license from the state board of osteopathic examiners, whereas it prohibits everyone else from doing so without a license, and hence is repugnant to section 1 of the Fourteenth Amendment of the Constitution of the United States, which guarantees the equal protection of the laws. In the case of *State* v. *Dodd, supra,* the contention was made that the proviso found in section 1591 of the statute, relating to the practice of medicine, denies to every person, except an osteopath, the right to practice medicine or surgery without a license while it permits him to practice it. In disposing of the contention, the court, speaking through Mr. Justice Holloway, said: ''Counsel for appellant insists that the effect of that section, with the proviso quoted, is to deny to every person, except osteopaths, the right to practice medicine or surgery in Montana without a certificate from the state board of medical examiners, and that, in excepting licensed osteopaths from the operation of its provisions those persons thus favored are free to engage in the practice of medicine or surgery without having to submit to the ordeal of an examination and without having the

certificate required of every other one who seeks to engage in the like practice. If the construction thus sought to be placed upon the language of section 1591 is justified, we might readily assent to the conclusion that the classification made is an arbitrary one, and that the case presented upon this appeal falls within the rule announced in *State* v. *Cudahy Packing Co.*, 33 Mont. 179, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 833, and that the statute in its operation denies to the appellant the equal protection of the laws. In assuming, however, that section 1591 permits an osteopath to practice medicine without a certificate from the state board of medical examiners, counsel for appellant errs, and with the fall of this, his fundamental premise, goes his entire argument.'' It was further said: ''When the proviso was inserted in what is now section 1591, the legislature understood that the practice of osteopathy (a) did not comprehend the practice of medicine or surgery; and (b) that it was already regulated and controlled by appropriate statutes enacted pursuant to the police power of the state. The only effect, then, of this legislation, has been to classify all those engaged in the healing art into two classes: (1) Physicians and surgeons, or those engaged in the practice of medicine or surgery; and (2) osteopaths, or those devoted to the practice of osteopathy. That legislation which makes a reasonable classification of subjects is not open to any constitutional objection upon that ground has been determined so often that argument upon the matter may well be deemed foreclosed.'' If section 1591 does not authorize an osteopath to practice medicine or surgery, obviously section 1605 does not permit a practitioner of medicine or surgery to practice osteopathy; and so it was held in the decision in *State* v. *Wood*, 53 Mont. 566, 165 Pac. 592.

3. It is contended that the statute makes an arbitrary classification denying the right of citizens to engage in a lawful [3] occupation, and is therefore an abuse of the police power of the state. This contention has heretofore been several times the subject of consideration by this court, and determined con-

trary to the contention of counsel. (*Craig* v. *Medical Examiners,* 12 Mont. 203, 29 Pac. 532; *State ex rel. Board of Medical Examiners* v. *District Court,* 26 Mont. 121, 66 Pac. 754; *Johnson* v. *City of Great Falls,* 38 Mont. 369, 16 Ann. Cas. 974, 99 Pac. 1059; *State* v. *Dodd, supra.*) In *State* v. *District Court, supra,* in considering the validity of the provisions relating to the practice of medicine or surgery, the court said: ''It may be stated, as a general proposition, that every person has a natural right to pursue any lawful business or profession. This general statement is subject, however, to the limitation that the person asserting such a right must, before attempting to exercise it, comply with all reasonable police regulations made by the state touching the qualifications declared necessary for the particular calling. In the absence of such regulations, the right is absolute, and may be exercised at pleasure; but where they exist, compliance with them is a condition precedent, and until this condition is fulfilled the right is in abeyance, and may not be exercised at all.  *  *  *  Such legislation has always been upheld as a wise exercise of the police powers of the state, and necessary to the protection of the public. This is particularly true of a calling or profession which requires technical knowledge and skill. Without such knowledge and skill in the practitioner, there is danger that damage will result to those who employ him. Therefore one may be prohibited from pursuing such a calling or profession until he has been examined by the lawfully constituted authorities, and declared sufficiently qualified to engage in it with safety to the public.''

Counsel for defendant insists that chiropractic is not the [4] same science or system as osteopathy, and that it is not reasonable to require a chiropractic who recognizes no similarity between the system he practices and osteopathy to pursue the course of study at a school of osteopathy as provided by the statute (sec. 1598) and to be examined upon the theory and practice of it. The mere difference in name, however, does not alter the fact that, whatever may be the distinction between the two as to the technical method of administering treatment,

both administer it by the use of the hands. The spine is one of the parts of the body. The confinement by the chiropractor of his treatment principally to the spine does not excuse him from undergoing the ordeal of the examination prescribed for osteopaths whose treatment includes the spine as well as all other parts of the structure of the human body. Because of the difference in name it cannot be said that the examination prescribed by the legislature has proper relation to the practice of osteopathy, while it has none to the practice of the chiropractic. In the judgment of the legislature, proficient knowledge of the anatomy and the other branches of science enumerated (sec. 1598) was deemed necessary to qualify an osteopath to treat the human body. Counsel does not question the propriety of this requirement so far as it applies to the practice of osteopathy. If proficient knowledge of these sciences pertaining to the human body have no relation to the practice of chiropractic, which is nothing more nor less than osteopathy under another name, it is impossible to conceive what qualifications a practitioner of it should possess.

In *Dent* v. *West Virginia,* 129 U. S. 114, 32 L. Ed. 623, 9 Sup. Ct. Rep. 231, approved by this court in *Craig* v. *Medical Examiners, supra,* the court, after declaring that it is within the province of the state legislature to regulate the practice of medicine in order to protect the members of the public from the consequences of ignorance and incapacity, as well as deception and fraud, laid down the test of the validity of the regulations on the subject as follows:

"The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty. It is only when they have no relation to such calling or profession or are unattainable by such reasonable study and application that they can operate to deprive one of his right to pursue a lawful vocation."

4. It is argued that the legislation is an attempt to restrict all healing by drugless treatment to a single school, and thus confer [5] a monopoly on the school of osteopathy. This contention is without merit. It is true that the statute defines the practice of osteopathy as a drugless treatment, because it is therein limited exclusively to treatment by use of the hands or mechanical appliances, and requires acquaintance with the various sciences enumerated and the theory and practice according to the standards prescribed by recognized schools of osteopathy. But this does not give this school a monopoly of the practice. It leaves every person who in the judgment of the board has demonstrated that he possesses the knowledge and qualifications prescribed to engage in the practice and to earn his livelihood by this means. The legislation is not rendered objectionable by the fact that some persons choose to adopt another name and profess to belong to and to represent a different school. The statute merely discloses that one using the method of treatment therein described shall be deemed practicing osteopathy, and that he must secure a license before he engages in the practice for compensation. If he does this, he has fully complied with the statute, and it is not material whether he chooses to style himself chiropractor or osteopath. In enacting the statute the legislature was concerned about the qualifications which the practitioner must possess to the end that the public should be protected from fraud and imposition, and not with the names of schools.

5. The information charges: That on or about the 23d day of October, 1915, the defendant "did willfully, unlawfully," *etc.* "practice osteopathy under and by the name of chiropractic or [6] chiropractor, * * * without first having obtained a certificate or license from the state board of osteopathic examiners of the state of Montana." The court instructed the jury in part as follows: "The material and necessary allegations of the information herein which must be established by the state beyond a reasonable doubt are the following: * * * (3) That the defendant did not first obtain a certificate or license from the state board of osteopathic examiners of the state of Montana."

It is asserted that there is no evidence showing that the defendant did not have a temporary certificate from the board permitting him to practice at the time alleged in the information. It is contended that the verdict is obviously contrary to the instruction, and hence contrary to the law.

The statute (Rev. Codes, sec. 1595) requires the secretary of the board to keep a record of the names of all applicants for license, the time each has devoted to the study and practice of osteopathy, and the name and location of the school from which he holds a diploma. It also requires him to keep a register of the names of all applicants licensed or refused a license. This record is declared to be *prima facie* evidence of all matters recorded therein. The license, when issued, must be signed by the president and secretary of the board. It is referred to in that section indifferently as a certificate or license. Section 1597 authorizes the secretary at any time when the board is not in session, upon examination of an applicant for license, to issue to him a temporary certificate permitting him to practice until the next meeting of the board; whereupon the applicant must submit himself to an examination by the board. If he then shows that he has the required qualifications, he is granted a certificate or license by the board. The argument of counsel assumes that the charge in the information refers to the temporary certificate issued by the secretary, whereas the charge is that the defendant engaged in the practice ''without first having obtained a certificate or license from the state board,'' *etc.* This allegation was material, and the court properly instructed the jury that it must be established by the state beyond a reasonable doubt. Such in fact was the case; for the record of the secretary discloses that the defendant had never applied to the board for a license, nor even to the secretary for a temporary license or certificate, and there was no evidence to contradict it. The argument of counsel therefore falls to the ground.

In formulating the information the county attorney proceeded [7] upon the correct assumption that it was not necessary for him to allege that defendant had not procured a temporary cer-

tificate; as that forms no part of the charge of a violation of the statute, but is a matter of defense. (*State* v. *Wood, supra.*)

The information also alleges that the defendant was not a duly [8] licensed practitioner of medicine or surgery. The court informed the jury that they must find the truth of this allegation beyond a reasonable doubt before they could convict the defendant. It is argued that there was no evidence that the defendant was not duly licensed to practice medicine or surgery, and hence that the verdict in this particular is contrary to law. The original Medical Practice Act was passed in 1889. (Laws 1889, p. 175.) It prohibited the practice of medicine or surgery by anyone who did not hold a certificate from the board of medical examiners created by it. It provided, among other things, for the granting of a certificate by the board to any applicant upon presentation of a diploma from a medical school legally organized and of good standing. If the applicant was not a graduate as therein provided, he was required to apply to the board and submit to an examination as to his proficiency in knowledge of the branches of learning enumerated, unless he had been engaged in the practice in the territory for not less than ten years. In the latter case he was not required to submit to an examination, but was required to present to the board satisfactory evidence that he came within the exception. (Sec. 3.) Those who came within the exception, as well as other persons thereafter commencing to practice, were required to obtain a certificate or license. (Sec. 4.) Section 2 required the board to keep a record of its proceedings, including a register of the names of all applicants, both those who received certificates and those whose applications were rejected. This record was declared by that section to be *prima facie* evidence of all matters therein recorded. The original Act has been amended in several particulars. It is not necessary to refer to the amendatory Acts. It is sufficient for present purposes to say that, however the legislation has been changed otherwise, the provision relating to the keeping of the record and its value as evidence has been retained substantially as it was in the original Act. (Rev.

54 Mont.—5

Codes, sec. 1586.) We shall not stop to inquire whether the allegation in the information is material, and hence whether the instruction submitted to the jury was proper. Assuming this to be so, the contention of counsel is without merit. Dr. W. C. Riddell, the present secretary of the board, who had in his possession in the courtroom the records of the board from the date of its first meeting up until the date of the trial, testified that the name of the defendant did not appear upon the register of applicants to the board for a certificate or license. The record being identified as one required by law to be kept by an officer of the board, the presumption attached that it had been correctly kept. (Rev. Codes, sec. 7962.) It was therefore *prima facie* evidence that the defendant was not licensed to practice medicine or surgery. This was sufficient to send the case to the jury.

Other questions are suggested by counsel in his brief; but they are not argued, and therefore are not noticed.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

