STATE, APPELLANT, *v.* THIERFELDER, RESPONDENT.
(No. 8316.)

(Submitted November 17, 1942. Decided January 2, 1943.)

[132 Pac. (2d) 1035.]

Order reversed with direction to grant the State a new trial.

*Mr. John W. Bonner,* Attorney General, *Mr. Howard M. Gullickson,* First Assistant Attorney General, *Mr. John M. Comfort,* County Attorney of Madison County, *Mr. Lyman H. Bennett, Jr.,* Acting County Attorney, and *Mr. Paul T. Keller,* Special Counsel, for Appellant, submitted an original and a reply brief; *Mr. Fred Lay,* Assistant Attorney General, and *Mr. Keller* argued the cause orally.

*Mr. Frank E. Blair* and *Mr. H. Leonard DeKalb,* for Respondent, submitted an original and a reply brief, and argued the cause orally.

*Mr. Walter L. Pope, amicus curiae,* appearing in behalf of the State Board of Medical Examiners, submitted an original and a reply brief.

MR. JUSTICE MORRIS delivered the opinion of the court.

The defendant, a licensed osteopath, is charged by information with practicing medicine without a license. On arraignment he pleaded not guilty, and his demand for a bill of particulars was granted; his general and special demurrer was overruled. On trial of the action, when the state finished its case in chief and rested, the defendant moved the court for a directed verdict as follows: "Upon the State having announced that it rested and the defendant electing not to proceed further with evidence he now respectfully moves the Court to advise the jury and direct the jury to return a verdict of not guilty upon all the grounds and each of the grounds specified in our other motion for a dismissal." Thereupon the court made this order: "It is hereby ordered that the jury in the above entitled action be directed to return a verdict in favor of the defendant and against the State upon the grounds stated in defendant's motion and the defendant is discharged and his bondsmen exonerated." The state appealed.

The assignments of error are numerous and will not be taken up in detail. We think they will be fully covered by consideration of the issues under the following headings:

1. Should the motion to dismiss the appeal be granted by reason of:

(a) The alleged absence from the record of a judgment roll;

(b) For the alleged reason that the state has no right of appeal under section 12108, Revised Codes, and therefore this court is without jurisdiction;

(c) Is the information "fatally defective"?

2. Is subdivision 5 of section 12108, Revised Codes, unconstitutional?

3. Is defendant's contention that he has a right to practice surgery sustained by the statutes?

4. Is the Medical Practice Act, Chapter 267, Revised Codes, "an unconstitutional discrimination against osteopathic schools?"

We will take these questions up in the order mentioned.

1 (a) Of what a judgment roll shall consist in a criminal action is provided by section 12074, Revised Codes. We have in the record before us all the papers mentioned in that section of the statute that are essential to make up a judgment roll in such a case as this. True, there is no judgment roll in the record under that name, but subdivision 5 of section 12108, Revised Codes, gives the state the right of appeal "From an order of the court directing the jury to find for the defendant." The appeal is before us by virtue of this statutory provision and unless the statute be unconstitutional as contended by defendant, a question we shall presently consider, the appeal is valid. The order of the court has all the attributes of a judgment.

In the case of *State* v. *Atlas*, 75 Mont. 547, 244 Pac. 477, 478, a similar question of procedure was involved. It was there said:

"1. The defendant has moved to dismiss the appeal upon the ground that 'the attempted appeal is not taken by the

state from a judgment for the defendant, nor from any order from which an appeal may be taken.'

"Defendant relies upon the decision in *State* v. *Nilan, ante* [75 Mont. 397] 243 Pac. 1081. * * * In that case this court declared: 'The record on appeal in a criminal case, says the statute, shall consist of the judgment roll as defined in section 12074 of the Code, a copy of the notice of appeal, and all bills of exception settled and filed in the case,' etc.

"Section 11901, Revised Codes of 1921, reads as follows: 'Upon considering the demurrer, the court must give judgment, either allowing or disallowing it, and an order to that effect must be entered upon the minutes.'

"In the *Nilan Case* we pointed out that, by reason of the particular requirements of this section and those contained in section 12110, two acts are required (1). giving judgment, and (2) entering the same in the minutes; and the order sustaining the demurrer constitutes the judgment. In that case the state failed to include in the record the minute entry, and therefore failed to show that the requirements of section 11901 had been complied with. For this reason the motion to dismiss in that case was sustained. Here the state did not transgress in this particular; the transcript contains the minute entry of the order allowing the demurrer, and therefore contains 'a copy of the judgment.' The motion to dismiss is therefore overruled."

It will be noted that in that case the court said "the order sustaining the demurrer constitutes the judgment." Here the order directing the verdict constitutes the judgment. The ruling in the *Atlas Case* followed a like ruling in the case of *State* v. *Libby Yards Co.*, 58 Mont. 444, 193 Pac. 394, and *State* v. *Nilan*, 75 Mont. 397, 243 Pac. 1081.

1 (b) Little need be said here as to the right of the state to appeal under subdivision 5 of section 12108. The statute expressly gives the state the right of appeal. The attempt of the defendant to show that the trial court did not ground its order directing the verdict on that statute but upon section

12227 is ingenious but unsound application of established rules of statutory construction.

(c) The next contention is that the information is fatally ■ defective for the reason that it fails to state a public offense. The information, as it appears in the record, includes all the wording prescribed by the form set out in the statute (sec. 11844, Rev. Codes), and states a public offense, and it is likewise in substantial compliance with section 11852 relating to the sufficiency of an information. Subdivisions 6 and 7 of the last mentioned statute are as follows:

"The indictment or information is sufficient, if it can be understood therefrom—* * *

"6. That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended;

"7. That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case."

The information is sufficient to inform any person of "common understanding" with what he is charged.

We do not agree with the contention that a bill of particulars, ■ when demanded by the defendant and granted, may not be resorted to to support an information. If such contention were upheld, it would effectually negative the purpose for which such a bill is sought or granted. The contents of defendant's motion demanding the bill of particulars, as it appears in the record, is nothing more than a demand for further details as to the charges set forth in general terms in the information. If it is not the purpose of such a bill to further advise the defendant of the charges against him, it has no office whatever.

2. Constitutionality of subdivision 5 of section 12108. In ■ considering the validity of a legislative Act, it will be presumed to be constitutional unless the contrary appears beyond

a reasonable doubt. (*State ex rel. Pierce* v. *Gowdy,* 62 Mont. 119, 203 Pac. 1115; *State ex rel. Bankers' Trust Co.* v. *Walker,* 70 Mont. 484, 226 Pac. 894; *State ex rel. Powell* v. *State Bank of Moore,* 90 Mont. 539, 4 Pac. (2d) 717, 80 A. L. R. 1494.) And every possible presumption must be indulged in favor of the constitutionality of a legislative Act. (*State* v. *Safeway Stores,* 106 Mont. 182, 76 Pac. (2d) 81, and cases cited.

Defendant's contention that subdivision 5 of section 12108, ██ ██ Revised Codes, is unconstitutional is largely based upon the assumption that giving the state the right of appeal from an order directing a verdict in favor of the defendant in a criminal action, as is done by subdivision 5, will lead to the violation of section 18 of Article III of the Constitution, which provides in part that no person shall "be twice put in jeopardy for the same offense." The question of double jeopardy is not an issue in this case. The plea of twice in jeopardy for the same offense is a special plea (sec. 11907, Rev. Codes). If the judgment of the trial court be reversed, as we think it must be, and a new trial ordered, we cannot assume that the special plea of twice in jeopardy will be made. It is a plea that the defendant may waive. (*State* v. *Fuller,* 34 Mont. 12, 18, 85 P. 369, 8 L. R. A. (N. s.), 762, 9 Ann. Cas. 648; *State* v. *Vanella,* 40 Mont. 326, 106 Pac. 364, 20 Ann. Cas. 398.) While we do not decide this question here for the reason that it is not in issue, we will say in passing that the decisions of this court do not tend to show that the defendant has yet been once in jeopardy for the offense charged. (*State* v. *Keerl,* 33 Mont. 501, 509, 85 Pac. 862; *State* v. *Vinn,* 56 Mont. 27, 35, 144 Pac. 773, *State* v. *Aus,* 105 Mont. 82, 69 Pac. (2d) 584.) This Act ██ has been on our statute books for more than half a century, and a number of cases have been before this court on appeal wherein the trial court had directed a verdict in favor of the defendant, and in none of such cases has the constitutionality of subdivision 5 been attacked. The provision serves a vital function in the administration of justice. It is one of five provisions of section 12108 by which the state is given the

right of appeal in a criminal case. Nearly all cases adjudicated by this court affecting the Act, were actions wherein the alleged error of the trial court arose out of an alleged misapplication of the provisions of section 11995, which provides: "If, at any time after the evidence on either side is closed, the court deems it insufficient to warrant a conviction, it may advise the jury to acquit the defendant; but the jury is not bound by the advice." We think the wording of this section is too clear to require judicial construction. It contrues itself. We think its clear, literal meaning prohibits the court from directing a verdict in any criminal case.

The great preponderance of authority, however, is to the contrary (17 A. L. R. 910), but general rules cited from other jurisdictions and text writers have but little application here by reason of our express statute. A brief review of what our predecessors have said as to section 11995, we think, will be helpful in arriving at our conclusions here. Section 11995 of the Revised Codes of 1935 first appeared in our 1895 Penal Code as section 2096; was carried forward into the 1907 Code as section 9297. In the case of *State* v. *Auchard*, 22 Mont. 14, 55 Pac. 361, the state appealed from a directed verdict in favor of the defendant. This court mentioned the fact that the district court instead of advising the jury to acquit peremptorily instructed it to do so, adding that such instruction by the court was not assigned as error. We are left to conjecture as to what the decision of the court would have been had the ruling been assigned as error. The remark of the Justice, however, is significant.

In *State* v. *Mahoney*, 24 Mont. 281, 61 Pac. 647, 648, the opinion was by Justice Pigott and, in referring to section 2096 of the 1895 Penal Code, said: "This section is applicable to those cases only in which the trial court deems the evidence * * * insufficient in weight to warrant a conviction."

In the case of *State* v. *Welch*, 22 Mont. 92, 55 Pac. 927, 928, the defendant was "convicted of murder in the second degree." Justice Pigott, again speaking for the court, said: "The record

presents, not a case of mere insufficiency of the evidence to warrant a conviction, but one of utter failure of proof, and therefore the court should have granted the motion to instruct the jury to find the defendant not guilty. There is a distinction between insufficiency of the evidence to justify a verdict, and no evidence at all upon which to base it. (*Louisville & N. R. Co.* v. *Woodson,* 134 U. S. 614, 10 S. Ct. 628, 33 L. Ed. 1032.) In the one case the court may advise the jury to acquit the defendant, which advice the jury is not bound to follow (Pen. Code, sec. 2096), whereas in the other case it is the duty of the court to direct a verdict of not guilty.''

In the case of *State* v. *Tate,* 55 Mont. 343, 177 Pac. 243, 244, the defendant was convicted of the crime of rape. In the opinion on appeal Justice Pigott, again speaking for the court, said: ''The evidence was sufficient as matter of law to prove every element necessary to constitute the crime, and hence the court did not err in refusing to direct a verdict of acquittal. We do not determine whether the court below should have advised the jury to acquit. Section 9297 of the Revised Codes, providing in effect that, if the court deems the evidence insufficient to warrant a conviction, it may advise, but not direct or compel, the jury to acquit, can be applicable only where the trial court deems the evidence which tends to prove * * * every element necessary to constitute the crime, to be clearly insufficient in weight to justify a verdict of guilt.'' (Citing cases.)

In the case of *State* v. *Gomez,* 58 Mont. 177, 190 Pac. 982, 983, the defendant and two others were jointly charged with murder. At the close of the state's case, on motion of his counsel, the court ordered the jury to return a verdict in favor of the defendant, and the state appealed. Chief Justice Brantly, speaking for the court, said: ''There was no substantial evidence upon which to base a verdict of guilty. * * * If the case had been submitted to the jury and a verdict of guilty had been returned, it would have been obligatory on the trial court, * * * to grant the defendant a new trial. It was therefore its

duty at the close of the evidence to order the jury, * * * to return a verdict of not guilty. * * *

"Contention was made by the Attorney General during the argument that the court should have advised the jury to acquit the defendant instead of peremptorily instructing them to do so. The statute (Rev. Codes, sec. 9297) 'is applicable to those cases only in which the trial court deems the evidence, * * * insufficient in weight to warrant a conviction.' "

In the case of *State* v. *Moe,* 68 Mont. 552, 219 Pac. 830, the defendant was found guilty of a statutory offense against a female minor. The trial judge, the Hon. S. D. McKinnon, in commenting on the testimony of the prosecutrix, characterized such testimony "so inherently improbable * * * that a fair-minded man could not believe it," and advised the jury to bring in a verdict of not guilty, adding: "However, you are not bound by the advice of the court." This advice was literally in accord with section 11995, Revised Codes. The jury did not follow the advice of the trial judge but found the defendant guilty and on motion the court granted defendant a new trial, and the state appealed. The opinion of this court rendered by Chief Justice Callaway affirmed the order of the trial court granting a new trial. It does not appear that the right of the state to appeal was brought in issue in that case.

In the case of *State* v. *Wong Hip Chung,* 74 Mont. 523, 241 Pac. 620, the defendant, "being on trial for feloniously possessing narcotics, was acquitted by direction of the court." On appeal by the state the judgment was reversed and the district court directed to grant the state a new trial.

In the case of *State* v. *Collins,* 88 Mont. 514, 523, 294 Pac. 957, 959, 73 A. L. R. 861, the defendant was charged with assault upon a female minor. Mr. Chief Justice Callaway, speaking for the court, said: "It is argued that, granting defendant did as Dolores says he did, he is not guilty of an assault with intent to rape, and the court should have granted defendant's motion for a directed verdict. Incidentally, the

court could have done no more than to advise the jury to acquit. (Sec. 11995, Rev. Codes, 1921.)''

Our section 11995 was adopted from the Penal Code of California, section 1118 of their Code. Prior to our adoption the Supreme Court of California had construed subdivision 6 of their section, which is the same as our subdivision 5, in the case of *People* v. *Daniels*, 105 Cal. 262, 38 Pac. 720, and in *People* v. *Horn*, 70 Cal. 17, 11 Pac. 470. In the latter case the court said: ''The court was only authorized to 'advise' the jury to acquit, and the jury were not bound by the advice.''

This court has frequently held that when we adopt a statute from another state we adopt the construction placed thereon by the highest court of the state from which adopted (*Mares* v. *Mares*, 60 Mont. 36, 199 Pac. 267), but we have also held that the above rule applies only if the construction of the statute by the courts of the state from whence it came appeals to this court as based upon sound reasoning. Later decisions of the courts of California have followed their earlier one.

While it is obvious that we have, in some of the decisions mentioned, modified the California construction (see *State* v. *Gomez*, supra), our modification is not, as appears to us, in strict accord with the letter of the statute. Where this court has held, however, that the trial judge should direct the acquittal of the defendant where there was no substantial evidence to sustain a verdict of guilty, it was no doubt moved to do so by reason of the rule that where there is no evidence of guilt there is no function for the jury to perform and the determination of the action becomes one of law only. This rule, we think, is fairly stated in *Isbell* v. *United States*, 8 Cir., 227 Fed. 788. It is our view that extreme caution should be exercised by the trial judge in directing a verdict in a criminal case. The jury under our system of government, are the judges of the weight and sufficiency of the evidence and in case of even slight doubt the matter should be allowed to go to the jury.

We think that the trial court should *advise* the jury to acquit only when the court is convinced there is no evidence to sustain

116

a verdict of guilty, but not *direct* a verdict. If the jury disregard the advice of the court, the remedy is by granting a new trial, as was done by the district judge in the case of *State* v. *Moe,* supra. It is our opinion that the trial judge was clearly in error in the case at bar in directing a verdict for the defendant in two particulars: First, in directing, instead of advising, a verdict in compliance with the provisions of section 11995; and, second, the court erred in disregarding the uncontradicted testimony of Minnie Alger, the person upon whom the defendant performed the tonsillectomy which was amply sufficient to carry the question to the jury, under proper instructions. Subdivision 5 of section 12108, Revised Codes, is the only mode provided by which such errors may be corrected, and the section is not unconstitutional.

3. It is next contended that the defendant is authorized by the certificate issued to him by the State Board of Osteopathic Examiners to practice surgery. This contention is largely based upon the assumption that the original Act authorizing the practice of osteopathy in Montana expressly forbids an osteopathic licensee to practice "major, minor or operative surgery," (Laws 1901, p. 50, sec. 6), and the word "minor" being omitted from the law by an amendment in 1905, (Chapt. 51, p. 106), therefore the legislature intended to permit osteopaths to practice minor surgery. To such contention we do not agree. We think the reason for the amendment was this: The section as originally enacted in 1901 read: "The certificate provided for in Section five of this Act shall not authorize the holder thereof to prescribe drugs in the practice of osteopathy, for [or] to perform major or operative survery; and any person holding certificate under this Act, who shall prescribe or use drugs in the practice of osteopathy, or who shall perform major, minor or operative surgery, shall be deemed guilty of a misdemeanor; provided that nothing in this Act shall be so construed as to prohibit any legalized osteopath in this State from practicing major or operative surgery after having passed a satisfactory examination in surgery before the State Board of Medical

Examiners of the State of Montana". (Session Laws of 1901, page 50.)

The only change made in this law in 1905 (page 109, Session Laws 1905) was to drop the word "minor" from the section. This was obviously done to clarify the section and to make it uniform wherever it referred to operative surgery. According to all medical authorities "operative surgery" includes both major and minor surgery and we have no doubt the legislative assembly believed the term "minor" was superfluous. We are further of the opinion that the amendment to the Medical Practice Act, by Chapter 101 of the 1907 Session Laws, does not in any manner broaden the powers of Osteopathic practitioners. This amendment is referred to in *State* v. *Wood,* 53 Mont. 566, 571, 165 Pac. 592, 594, as the "so-called proviso added to section 1591." It is now a part of section 3122, Revised Codes. Section 3129, Revised Codes, prescribes the examination osteopaths shall take and pass before they are entitled to a license to practice osteopathy. Section 3136 defines "osteopathy" and this court said in interpreting that section in *State* v. *Dodd,* infra: "The section provides among other things: 'Every person shall be deemed practicing osteopathy within the meaning of this Act who shall, * * * treat, cure, alleviate or relieve any ailment or disease of either mind or body, or cure or relieve any fracture or misplacement or abnormal condition, or bodily injury or deformity, by any treatment, or manipulation or method of manipulating a human body or any of its limbs, muscles or parts, *by the use of the hands, or mechanical appliances,* in an effort or attempt to relieve any pressure, obstruction, misplacement or defect, in any bone, muscle, ligament, nerve, vessel, organ or part of the body.' Within the entire scope of his practice, the osteopath is confined to treatment *by the use of the hands or mechanical appliances.*"

In the case of *State* v. *Wood,* 53 Mont. 566, 571, 165 Pac. 592, 594, it is said: "In *State* v. *Dodd,* 51 Mont. 100, 149 Pac. 481, we considered these statutes at length and concluded that the practice of medicine and surgery does not include the practice of

113

osteopathy, and that the practice of osteopathy does not include the practice of medicine or surgery; that the Legislature has grouped all persons practicing the healing art into two distinct classes, (1) physicians and surgeons, and (2) osteopathic practitioners, and that the so-called proviso added to section 1591 above 'did not affect the status of osteopathic practitioners in the least. They were confined thereafter, as theretofore, to the practice of osteopathy and forbidden to practice medicine or surgery without the certificate from the state board of medical examiners required of everyone who seeks to engage in such practice.' We are more than ever confirmed in the correctness of those conclusions. The so-called proviso found in section 1591, and the like provision in section 1605b, were doubtless enacted out of abundance of caution and to emphasize the legislative intention that neither school of practice should be held to infringe upon the other."

The Attorney General and *amicus curiae* are in accord in the case at bar in this: That operative surgery includes all surgery and the omission of the word "minor" in the 1905 amendment to the Osteopathic Act does not authorize osteopaths to perform surgery of any kind, either minor or major. With this we agree. The defendant's contention that he is authorized to practice minor surgery is grounded solely upon the 1905 amendment to the Osteopathic Act. The case of *State* v. *Wood*, supra, was decided in 1915, ten years after the 1905 Act on which defendant relies, and a number of later decisions of this court follow the rule laid down in that case, clearly denying any right of an osteopath to perform any surgical operation on human beings. The two schools of treatment are made separate and distinct by our statutes, and there is no reasonable ground for the assumption that an osteopath may "practice medicine" without first obtaining a license as required by Chapter 267 of the Political Code, relating to the practice of medicine.

Defendant further contends that if he is guilty of any offense it is that of practicing surgery, whereas he is charged with practicing medicine. The two are considered as one under

our statutes and under long acceptation by people generally, and there is no authority that we have found to justify any different notion about what practicing medicine means. Surgery is described by various authorities as follows:

"That branch of medical science, art, and practice, which is concerned with the correction of deformities and defects, the repair of injuries and diagnosis and cure of disease, the relief of suffering, and the prolongation of life, by manual and instrumental operations." (Webster's New International Dictionary.)

"There cannot be a complete separation between the practice of medicine and surgery, as they are developed by modern science, and understood by the most learned in the two professions; the principles of both are the same throughout, and no one is qualified to practice either who does not properly understand the fundamental principles of both.' (2 Bouv. Law Dict., Rawle's Third Revision, p. 3209).

"Therapy of a distinctively operative kind, such as cutting operations." (Century Dictionary and Cyclopedia.)

"The art, practice, or work of treating diseases, injuries, or deformities by manual operation or mechanical appliances; the branch of medicine that is concerned with such treatment." (New Century Dictionary.)

"The branch of healing art that resorts to manual operations or mechanical appliances for the treatment of injuries, deformities, or internal morbid conditions." (Standard Dictionary.)

The prosecution of the defendant was for an operation performed upon the person of Mrs. Minnie Alger and the operation consisted of removing her tonsils. In the bill of particulars it was alleged that defendant treated some ten other persons for various afflictions, and in a number of instances he used medicine and prescribed medicine of various kinds. But the evidence admitted as to any of the other violations of the law on the part of the defendant was admitted merely for the purpose of showing

a general course of conduct on the part of the defendant relative to the practice of medicine.

Among the many cases in which similar views are expressed, we cite the case of *State ex rel. Johnson* v. *Wagner,* 139 Neb. 471, 297 N. W. 906, 909, in which it is said: "The well-settled definitions of osteopathy, in the writings of Dr. Andrew Taylor Still, its founder, and in the writings of recognized practitioners, as well as in the dictionaries and the decisions of the courts, all uniformly hold that the system of osteopathy *administers no drugs and uses no knife.* (See *Nelson* v. *State Board of Health,* 108 Ky. 769, 57 S. W. 501, 50 L. R. A. 383; *State Board of Medical Examiners* v. *Baudendistel,* 140 Atl. 886, 6 N. J. Misc. 249; *Harlan* v. *Alderson,* 55 Cal. App. 263, 203 Pac. 1014)". There is no contention made that the defendant was authorized to practice medicine as provided for in Chapter 267, Revised Codes.

4. The only other contention we deem it necessary to con- sider is that Chapter 267, supra, entitled: "Medicine—Regulation of Practice," is unconstitutional. Keeping in mind the rules relative to consideration of the unconstitutionality of an Act of the legislature, we take up the consideration of this alleged unconstitutional Act. This Act was attacked on constitutional grounds as long ago as 1892, in the case of *Craig* v. *Board of Medical Examiners,* 12 Mont. 203, 29 Pac. 532. A license was denied to Dr. Craig, the plaintiff in that case, on the sole ground that he refused to submit to an examination by the defendant board. His graduation from a reputable medical school was established, and he was otherwise admitted to be qualified. This court sustained the lower court on the ground that denial of the plaintiff's right to practice medicine within the state was a proper exercise of the state's police powers. In the course of the opinion the court quoted with approval from the case of *Dent* v. *West Virginia,* 129 U. S. 114, 9 S. Ct. 231, 233, 32 L. Ed. 623, wherein Mr. Justice Field, speaking for the court, said:

"It is undoubtedly the right of every citizen of the United

States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex, and condition. This right may in many respects be considered as a distinguishing feature of our republican institutions. Here all vocations are open to every one on like conditions. All may be pursued as sources of livelihood, some requiring years of study and great learning for their successful prosecution. The interest, or, as it is sometimes termed, the 'estate,' acquired in them—that is, the right to continue their prosecution—is often of great value to the possessors, and cannot be arbitrarily taken from them, any more than their real or personal property can be thus taken. But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society. The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance and incapacity, as well as of deception and fraud. As one means to this end it has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely; their possession being generally ascertained upon an examination of parties by competent persons, or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal. The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty.''

That rule, and the reason therefor, has been followed by this court and emphasized in the following cases: *State* v. *Dodd*, supra, and *State* v. *Hopkins*, 54 Mont. 52, 166 Pac. 304, Ann.

Cas. 1918D, 956. In the last mentioned case, the opinion of the court was by Chief Justice Brantly. In each case substantially the same grounds of attack on the constitutionality of the Act were advanced, and each time they were held to be without merit. To attack the constitutionality of the right of the state to control the practice of medicine within the state by proper examination, through a state board or otherwise, and bring in question the constitutionality of an Act which the legislature has maintained on our statute books relative thereto for more than half a century, is in effect an attack upon the right of the legislative department to exercise its police powers, one of the most vital legislative powers of a state and which affects the welfare of all the people.

The judgment of the trial court is reversed and the cause remanded with instructions to revoke the order directing a verdict and to grant the state a new trial.

MR CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ERICKSON and ANDERSON concur.

Rehearing denied January 27, 1943.